**2014-1113**

In The

# United States Court Of Appeals
# For The Federal Circuit

## TERRYL J. SCHWALIER,
### United States Air Force Retired Brigadier General,

*Plaintiff - Appellant,*

v.

## CHARLES T. HAGEL, Secretary of Defense,

*Defendant - Appellee.*

Appeal from the United States District Court for the
District of Columbia

––––––––––––––––

## BRIEF OF APPELLANT

––––––––––––––––

David P. Sheldon
LAW OFFICES OF
  DAVID P. SHELDON
512 8th Street, SE
Barracks Row
Washington, DC 20003
(202) 546-9575

Edward F. Rodriguez, Jr.
LAW OFFICES
4133 Evergreen Drive
Fairfax, VA 22032
(703) 691-0184

*Counsel for Appellant*          *Counsel for Appellant*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, the undersigned counsel for Appellant hereby certifies that:

1.      The full names of every party or amicus represented by me is:

**Terryl J. Schwalier**

2.      The names of the real parties in interest represented by me is:

**None**

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**None.**

4.      The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the trial court or are expected to appear in this court are as follows, representing the Plaintiff-Appellant, Terryl J. Schwalier

**David P. Sheldon and Brian D. Schenk, Law Offices of David P. Sheldon, Washington, DC; Edward F Rodriguez, Jr., Law Offices, Fairfax, VA; and Michael T. Rose, Mike Rose Law Firm, PC, Summerville SC**

Respectfully Submitted,
Law Offices of David P. Sheldon

Dated: January 21, 2014

By: */s/ David P. Sheldon*
     David P. Sheldon

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF CONTENTS ........................................................................................ii

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF RELATED CASES ........................................................................x

STATEMENT OF JURISDICTION ..........................................................................1

STATEMENT OF THE ISSUES...............................................................................2

STATEMENT OF THE CASE ..................................................................................3

    1.    The bombing of Khobar Towers, subsequent investigations, and removal from the major general promotion list............................................3

    2.    Schwalier's Initial AFBCMR Application.............................................8

    3.    2007 – 2008 Reconsideration AFBCMR Application ........................14

SUMMARY OF THE ARGUMENT .......................................................................17

ARGUMENT .....................................................................................................21

    STANDARD OF REVIEW.........................................................................21

    1.    The lower court erred in holding that the DoD and DAF's actions with regard to the 2004 correction to Schwalier's records are not subject to judicial review...........................................21

    2.    The Appellees' actions, with regard to the 2004 (initial) and 2007 (reconsideration) corrections of Schwalier's records, were arbitrary, capricious and contrary to law...........................................25

A.    SecAF's statutory and regulatory authority to correct military records pursuant to 10 U.S.C. § 1552 ........................25

B.    The Appellees' actions, with regard to the 2007 (reconsideration) correction of Schwalier's military records, were arbitrary, capricious and contrary to law............31

    (1)    The Director, AFRBA's, December 20, 2007, correction of Schwalier's record was "final and conclusive" within the meaning of 10 U.S.C. § 1552(a)(4) and binding regulations ................................31

    (2)    DoD, by interfering with and ordering the invalidation of SecAF's actions, violated 10 U.S.C. § 1552(a)(4) and binding regulations ............................33

    (3)    DAF, by rescinding and reversing a final and conclusive correction of Schwalier's records, violated 10 U.S.C. § 1552(a)(4) and binding regulations........................................................................35

C.    The Appellees' actions, with regard to the 2004 (initial) correction of Schwalier's military records, were arbitrary, capricious and contrary to law .................................................36

    (1)    The Director, AFRBA's, October 6, 2004, correction of Schwalier's record was a "final and conclusive" decision under 10 U.S.C. § 1552(a)(4) and applicable regulations .............................................36

    (2)    DAF, by rescinding and reversing a final and conclusive correction of Schwalier's records, violated 10 U.S.C. § 1552(a)(4), 32 C.F.R. § 865 and AFI 36-2603............................................................38

    (3)    The Director, AFRBA's, August 19, 2005 denial of Schwalier's AFBCMR application violated SAFO 253.1 para. 4(b) .................................................38

3.      The AFBCMR reasonably found that Schwalier was promoted
        effective January 1, 1997 and the President's removal was
        untimely ............................................................................... 39

4.      The lower court erred in holding that 10 U.S.C. § 8013 and 10
        U.S.C. § 140(b) permitted DoD GC to interfere with a valid
        SecAF records correction decision, pursuant to 10 U.S.C. §
        1552 ...................................................................................... 48

        A.      The plain meaning of 10 U.S.C. § 1552 prohibited DoD
                OGC from interfering with DAF records corrections ............... 50

        B.      The specific language of 10 U.S.C. § 1552 detailing
                military department secretaries records-correction
                authority must override the general statute governing the
                DoD's "authority, direction and control" of DoD
                components as it relates to DoD GC's authority ...................... 52

        C.      The legislative history of section 1552 suggests that DoD
                GC's actions were improper ....................................................... 54

        D.      The lower court's interpretation of DoD GC's authority
                is wholly inconsistent with the applicable implementing
                regulations ................................................................................ 55

CONCLUSION ........................................................................................ 58

ADDENDUM

STATUTES AND REGULATIONS ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*Accardi v. Shaughnessy*,
    347 U.S. 260 (1954)......................................................................28

*Ashe v. McNamara*,
    355 F.2d 277 (1st Cir. 1965)...................................................*passim*

*Burns v. Director, Office of Workers' Compensation Programs*,
    41 F.3d 1555 (D.C. Cir. 1994).......................................................23

*Camilo v. United States*,
    642 F.3d 1040 (Fed. Cir. 2011) ....................................................21

*Chappell v. Wallace*,
    462 U.S. 296 (1983)......................................................................25

*Clark v. Busey*,
    959 F. 2d 808 (9th Cir. 1991) .......................................................23

*Clifton Power Corp. v. FERC*,
    294 F.3d 108 (D.C. Cir. 2002).......................................................23

*Cummings v. Dep't of the Navy*,
    279 F.3d 1051 (D.C. Cir. 2002).............................................. 50-51

*D. Ginsberg & Sons, Inc. v. Popkin*,
    285 U.S. 204, 76 L. Ed. 704, 52 S. Ct. 322 (1932) .......................53

*Dysart v. United States*,
    369 F.3d 1303 (Fed. Cir. 2004) .............................................*passim*

*Exxon Chemicals America v. Chao*,
    298 F. 3d 464 (5th Cir. 2002) .......................................................23

*Heiser v. Islamic Republic of Iran*,
    466 F. Supp. 2d 229 (D.D.C. 2006)................................................4

*Heisig v. United States*,
   719 F.2d 1153 (Fed. Cir. 1983) .....................................................................21

*Marbury v. Madison*,
   5 U.S. 137 (1803).................................................................................*passim*

*Millican v. United States*,
   744 F. Supp. 2d 296 (D.C. Cir. 2010) ....................................................42, 47

*Morton v. Mancari*,
   417 U.S. 535 (1974)...............................................................................52, 53

*Morton v. Ruiz*,
   415 U.S. 199 (1974)...............................................................................28, 56

*Ogden v. Zuckert*,
   298 F.2d 312 (D.C. Cir. 1961)......................................................................26

*Orloff v. Willoughby*,
   345 U.S. 83 (1953)........................................................................................40

*Schwalier v. Hagel, et al.*,
   734 F.3d 1218 (D.C. Cir. 2013) ................................................................2, 17

*Schwalier v. Panetta, et al.*,
   839 F. Supp. 2d 75 (D.D.C. 2012).........................................................*passim*

*Service v. Dulles*,
   354 U.S. 363 (1957).....................................................................................56

*Smriko v. Ashcroft*,
   387 F. 3d 279 (3d. Cir. 2004) ......................................................................22

*Stone v. Immigration and Naturalization Serv.*,
   514 U.S. 386 (1995).....................................................................................22

*Strickland v. United States*,
   423 F.3d 1335 (Fed. Cir. 2005) ....................................................................21

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954).....................................................................................56

*United States v. Stewart*,
  104 F.3d 1377 (D.C. Cir. 1997)............................................................... 52-53

*Vitarelli v. Seaton*,
  359 U.S. 535 (1959)....................................................................................56

*Yellin v. United States*,
  374 U.S. 109 (1963)....................................................................................56

## STATUTES:

5 U.S.C. § 551 *et seq.* (APA) ..................................................................*passim*

5 U.S.C. § 704 ...........................................................................................22

10 U.S.C. § 113 ..........................................................................................28

10 U.S.C. § 140(b) .........................................................................2, 48, 49, 54

10 U.S.C. § 525(e) ......................................................................................12

10 U.S.C. § 611(a) ................................................................................40, 41

10 U.S.C. § 624 ...................................................................................6, 7, 41

10 U.S.C. § 624(c) ......................................................................................39

10 U.S.C. § 624(d) ......................................................................................42

10 U.S.C. § 626(a) ......................................................................................41

10 U.S.C. § 629 ..........................................................................................42

10 U.S.C. § 1552 ...............................................................................*passim*

10 U.S.C. § 1552(a)(1) ......................................................................*passim*

10 U.S.C. § 1552(a)(3)............................................................................28, 29, 51

10 U.S.C. § 1552(a)(4)......................................................................*passim*

10 U.S.C. § 8013 ...............................................................................*passim*

28 U.S.C. § 1295(a)(2) ("Little Tucker Act") .................................................. 1

28 U.S.C. § 1346(a)(2) ...................................................................................... 1

**CONSTITUTIONAL PROVISION:**

U.S. Const. art. I ............................................................................................25

**REGULATIONS:**

32 C.F.R. § 253.1 (SAFO) ......................................................................*passim*

32 C.F.R. § 865 .........................................................................................36, 38

32 C.F.R. § 865.05 ..........................................................................................36

32 C.F.R. § 865.07 ..........................................................................................36

32 C.F.R. § 865.1 ............................................................................................29

32 C.F.R. § 865.2(a) ........................................................................................29

32 C.F.R. § 865.4(k) ........................................................................................30

32 C.F.R. § 865.6 ............................................................................................22

32 C.F.R. §§ 865.0–865.8 ...........................................................29, 51, 56

AFI 32-3203 (Air Force Instruction) ..............................................................15

AFI 36-2501 (Air Force Instruction) .......................................................6, 41, 42

AFI 36-2603 (Air Force Instruction) .........................................................*passim*

DoD Dir. 1332.41 (Department of Defense Directive) ........................29, 51, 52, 57

DoD Dir. 5145.01 (Department of Defense Directive) ....................................49, 54

**RULE:**

Fed. R. App. 4(a)(1)(B) .................................................................................. 1

**OTHER:**

Antonin Scalia & Bryan Garner,
*Reading Law: The Interpretation of Legal Texts* (2012) ...................................50, 53

Brig. Gen. Terryl J. "Terry" Schwalier—Biography,
http://www.af.mil/information/bios/bio.asp?bioID=7073 ................................................. 3

H.R. Rep. No. 449, 82d Cong., 1st Sess. (1951) .............................................*passim*

H.R. Rep. No. 1181, 82d Cong., 1st Sess. (1951) ...........................................27, 55

Keith A. Rosenberg, comment, *The Relationship Between Military
Correction Boards and the Comptroller General: Finality of Correction
Board Decisions Under 10 U.S.C. Section 1552*,
    22 Am. U. L. Rev. 222 (1972)................................................................27, 55

Legislative Reorganization Act of 1946,
    Pub. L. No. 79-601, § 207, 60 Stat. 812 (1946) ..........................................26

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant provides as follows:

(a) There have been no previous appeals in this case.

(b) Appellant is aware of no other case that will be directly affected by the Court's decision in this case.

## STATEMENT OF JURISDICTION

This appeal arises from the final decision and order of the United States District Court for the District of Columbia, in which the court granted Appellees' motion for summary judgment. A final appealable order was entered in the district court on March 14, 2012. A11. Schwalier filed a notice of appeal to the D.C. Circuit on May 10, 2012. A16. This appeal is timely pursuant to Fed. R. App. 4(a)(1)(B).

The Federal Circuit has exclusive appellate jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole *or in part*," on the "Little Tucker Act." 28 U.S.C. § 1295(a)(2)(emphasis added). The Little Tucker Act gives district courts concurrent jurisdiction with the Court of Federal Claims over most Tucker Act claims seeking less than $10,000. 28 U.S.C. § 1346(a)(2).

The district court based its jurisdiction on the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et seq.,* and did not analyze whether any part of the complaint invoked the Little Tucker Act.  *Schwalier v. Panetta, et al.*, 839 F. Supp. 2d 75, 80 (D.D.C. 2012).  Upon appeal to the D.C. Circuit, the court held that it lacked jurisdiction over the appeal because, although the complaint contained APA claims and sought specific equitable relief, including injunctive, mandatory and declaratory relief, it, nonetheless, was based, in part, on the Little Tucker Act.

1

*Schwalier v. Hagel, et al.*, 734 F.3d 1218, 1221, 1223 (D.C. Cir. 2013).  Thus, the

D.C. Circuit transferred the appeal.

## STATEMENT OF THE ISSUES

1.    Whether the lower court erred in holding that the Department of Defense

      and Department of the Air Force's actions with regard to the 2004

      correction to Schwalier's records are not subject to judicial review.

2.    Whether the Department of Defense and Department of the Air Force's

      actions, with regard to the 2007 correction of Appellant's military

      records to remove an injustice, were arbitrary, capricious and contrary to

      law.

3.    Whether the Department of Defense and Department of the Air Force's

      actions, with regard to the 2004 correction to Appellant's military records

      to correct an error, were arbitrary, capricious and contrary to law.

4.    Whether the Air Force Board for the Correction of Military Records

      reasonably found that Appellant was promoted effective January 1, 1997

      and the President's removal was untimely.

5.    Whether the lower court erred in holding that 10 U.S.C. § 8013 and 10

      U.S.C. § 140(b) permitted the Department of Defense General Counsel to

      interfere with a valid records correction carried out by the Secretary of

      the Air Force pursuant to 10 U.S.C. § 1552.

# STATEMENT OF THE CASE

**1.    The bombing of Khobar Towers, subsequent investigations, and removal from the major general promotion list.**

Brigadier General Terryl J. Schwalier ("Schwalier") graduated from the United States Air Force Academy in 1969 and over the course of his 28-year career, served in many operational assignments, becoming qualified in several combat aircraft. Between operational tours, Schwalier held headquarters and educational positions. *See* Brig. Gen. Terryl J. "Terry" Schwalier—Biography, http://www.af.mil/information/bios/bio.asp?bioID=7073.

On July 19, 1995, Schwalier reported to King Abdulaziz Airbase, Dhahran, Saudi Arabia, to assume command of the 4404th Wing (Provisional). *Schwalier v. Panetta, et al.*, 839 F. Supp. 2d. 75, 77 (D.D.C. 2012). The Wing was responsible for providing United States Air Force (USAF) aircraft to enforce the southern no-fly zone over Iraq. *Id.* Certain of the Wing's subordinate units and its living quarters were located in a small portion of Khobar Towers, a large Saudi high-rise apartment complex of 170 buildings located on the outskirts of the city of Khobar adjacent to the airbase. *See id.*

The Calendar Year 1995 Major General Promotion Selection Board recommended Schwalier's promotion to major general.  A25. On December 2, 1995, President Clinton nominated Schwalier for promotion to major general. *Schwalier*, 839 F. Supp. 2d. at 77. The Senate confirmed the nomination on March 14, 1996. A25.

In the evening of June 25, 1996, terrorists exploded a truck bomb in close proximity to Khobar Towers buildings occupied by Air Force personnel. The explosion occurred outside the Khobar Towers perimeter, within a civilian park patrolled by Saudi security. The bomb destroyed the face of one building, caused damage to others at some distance, killed nineteen Airmen and wounded hundreds.[1] A25.

The bombing resulted in four investigations, the first by the House National Security Committee, the second by General (GEN) Wayne Downing who was appointed by Secretary of Defense (SecDef) William Perry, and two by Air Force officials appointed by the Secretary of the Air Force (SecAF) and the Chief of Staff of the Air Force (CSAF). A25.

GEN Downing's charter initially did not include a requirement that his investigation determine responsibility or fault for security failings. A83, 85. However, by letter, dated July 12, 1996, to SecDef Perry, Senators Sam Nunn and Strom Thurman demanded that GEN Downing, contrary to his charter, determine whether and to what extent a breach of duty, with respect to the bombing, had occurred. A87. SecDef Perry acquiesced to Senators Nunn and Thurman's demand. On July 16, 1996, SecDef Perry wrote to Senator Thurman to say that he expected GEN Downing to report on whether anyone was at fault. A89.

---

[1] For the details of the bombing see *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

Meanwhile, the House National Security Committee issued its report on August 14, 1996. A40. The report concluded: "[o]verall, theater commanders exercised an aggressive and proactive approach to security . . . ." *Id.*

Approximately two weeks later, GEN Downing issued his report, which contained a finding that Schwalier had failed to adequately protect his troops. A40. SecAF Widnall and General (Gen) Ronald Fogleman, CSAF, subsequently forwarded GEN Downing's report to Lieutenant General (Lt Gen) James Record, USAF, tasking him to perform a disciplinary review. A92. They authorized him to convene general courts-martial to try any offenses committed by Air Force personnel stemming from the Khobar Towers bombing. *Id.* Upon completion of his disciplinary review, Lt Gen Record advised Schwalier that he and his chain of command had acted "in a responsible and prudent manner under the circumstances known at the time." A93. Lt Gen Record did not find "anyone to be derelict in the performance of . . . duties or to have committed any other offenses in violation of the Uniform Code of Military Justice." *Id.*

On December 20, 1996, Gen Thomas Moorman, Vice Chief of Staff of the Air Force (VCSAF), called Schwalier at his home. *Schwalier*, 839 F. Supp. 2d at 77. He told Schwalier that the Air Force had a "perception problem" with his coming promotion and needed thirty days to work on it and that he should not assume ("pin on") the grade of major general on January 1, 1997, as planned. A49,

123–24.  Earlier, the Air Force General Officer Matters Office (AFGOMO) had advised Schwalier, through his Pentagon office, that the effective date of his promotion would be January 1, 1997. *See* A123–24. Following Gen Moorman's call, Schwalier understood that he should postpone assuming his new grade by thirty days, *i.e.*, February 1, 1997. A49, 123–24.

Gen Moorman, by memorandum dated January 28, 1997, citing 10 U.S.C. § 624 and Air Force Instruction (AFI) 36-2501, advised Schwalier that he intended to recommend to SecAF Widnall that his promotion be delayed for a maximum of six months. A136. Gen Moorman stated that, "[t]he specific reason for this action is the investigation of the circumstances surrounding the bombing of the Khobar Towers in Dhahran, Saudi Arabia while . . . [Schwalier] . . . [was] Commander, 4404th Wing (Provisional). That matter is not yet completed." *Id.* He also informed Schwalier of his right to submit a statement, which SecAF Widnall would consider before taking action. *Id.* General Moorman's memorandum erroneously stated that Schwalier's promotion date was February 1, 1997. *Id.*[2]

That next day, Deputy Secretary of Defense (DepSecDef) John White criticized Lt Gen Record's report and directed SecAF Widnall to review force

---

[2] In the lower court proceedings, the Appellees, for the first time, contended that Schwalier's promotion date was February 1, 1997, not January 1, 1997. The lower court found it unnecessary to determine the correct date for the purposes of its decision. *Schwalier*, 839 F. Supp. 2d at 77 n. 1. However, the AFBCMR found that Schwalier's correct promotion date was January 1, 1997.  SecAF's delegee approved and adopted that finding.

6

protection and personal accountability issues related to the Khobar Towers bombing. A94–95. He agreed with SecAF Widnall's conclusion that courts-martial were not warranted. *Id.* However, he made it clear to SecAF Widnall that he expected her to consider further administrative disciplinary action. *Id.*

In response to DepSecDef White, SecAF Widnall and Gen Fogleman appointed The Inspector General of the Air Force, Lt Gen Richard Swope, and The Judge Advocate General of the Air Force, Major General (Maj Gen) Bryan Hawley, to undertake a further examination to determine whether to impose administrative disciplinary sanctions. A96.

While Lt Gen Swope and Maj Gen Hawley's report was pending, Schwalier submitted his personal statement to Gen Moorman responding to the recommendation to delay his promotion. A98–99. Four days later, SecAF Widnall, pursuant to 10 U.S.C. § 624, approved Gen Moorman's recommendation to delay Schwalier's promotion for six months. A134. SecAF Widnall's memorandum did not specify the start date of the six-month delay. *Id.* Gen Moorman informed Schwalier of SecAF Widnall's decision and although she had not indicated such, Gen Moorman stated that SecAF Widnall had reviewed Schwalier's personal statement. A135. Gen Moorman's memorandum was silent on the start date for the six-month delay. *Id.*

Lt Gen Swope and Maj Gen Hawley released their report of disciplinary investigation on April 12, 1997. A41. They found that Schwalier had acted reasonably and prudently, based on what . . . [he] knew at that time." A155.

Schwalier applied for retirement on July 28, 1997, when he learned that SecDef William Cohen was to take action against him. *Schwalier*, 839 F. Supp. 2d at 78. Three days later, SecDef Cohen released his report, which was unfavorable to Schwalier and recommended to President Clinton that Schwalier's name be removed from the major general promotion list. A26. In conjunction with the report release, SecDef Cohen held a televised press conference at which he announced that he had recommended that President Clinton remove Schwalier from the major general promotion list. A50. The President approved the recommendation. Schwalier retired from active duty in the grade of brigadier general, effective September 1, 1997. A26.

## 2.    Schwalier's Initial AFBCMR Application.

On April 7, 2003, Schwalier filed an application with the Air Force Board for the Correction of Military Records (AFBCMR). A34–42, 107–08. He requested correction of his records to reflect promotion to major general, effective January 1, 1997; retirement, as a major general; and receipt of appropriate back pay. A34. Schwalier alleged that SecDef Cohen's 1997 action, removing him from the major general promotion list, was both an error and an injustice. *Id.*

The AFBCMR requested and received an advisory opinion from the Administrative Law Division (AF/JAA) of the Office of The Judge Advocate General on action that "[the AFBCMR] can take regarding the request of retired Brigadier General Terry Schwalier . . . to be advanced to the grade of Major General and retired in that grade." A110. Schwalier responded to AF/JAA, pointing out that its advisory opinion contained factual errors, including the effective date of his promotion, which was January 1, 1997, not February 1, 1997. A114.

Several months later, AF/JAA issued another advisory opinion, concluding that (1) Schwalier's correct promotion date was January 1, 1997; (2) the six-month delay terminated on June 30, 1997; (3) the July 31 removal of Schwalier from the major general promotion list was without effect, since that action was taken outside the permissible six-month period; and (4) Schwalier had been promoted on January 1, 1997, by operation of law.  A127. AF/JAA went on to recommend that the AFBCMR correct Schwalier's records to reflect his promotion to major general, effective January 1, 1997, and that further action be taken to make him eligible for retirement as a major general. A132.

On August 2, 2004, the AFBCMR unanimously voted to recommend correction of Schwalier's records. A33. Its recommendations were to correct Schwalier's record to reflect that: (1) he was not retired on September 1, 1997; (2)

he continued on active duty; (3) he was promoted to major general on January 1, 1997; (4) he applied for retirement effective February 1, 2000; (5) his retirement request was approved; and (6) he was retired as a major general on February 1, 2000. *Id.* The recommendations were premised on a finding that administrative error had been committed in handling Schwalier's promotion delay and thus his removal from the major general promotion list was null and void. A24.

Acting for SecAF, Joe Lineberger, Director, Air Force Review Boards Agency (AFRBA), approved and adopted the AFBCMR's recommendations and, by memorandum, dated October 6, 2004, directed CSAF to correct the pertinent records of the Air Force in accord with those recommendations. A23.

Before providing AFRBA's October 6, 2004 records-correction directive to Schwalier, Acting SecAF Peter Teets informed DoD DepSecDef Paul Wolfowitz of the Department of the Air Force (DAF) records correction. A168. Acting SecAF Teets' letter acknowledged that DoD disagreed with the DAF decision, but the office of the SecAF "believe[d] that it would not be proper to modify the AFBCMR result." *Id.*

DoD's disagreement with the DAF decision is articulated in a memorandum from DoD Deputy General Counsel (Personnel and Health Policy), dated February 7, 2005 (incorrectly dated 2006), to DAF Deputy General Counsel (Military Affairs). A286. DoD Deputy General Counsel criticized the legal position taken by

10

the AFBCMR, asserting that the cases relied upon by the AFBCMR to find that Schwalier had been promoted by operation of law had been overturned by *Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004)—a case construing Presidential appointment authority articulated in *Marbury v. Madison*, 5 U.S. 137 (1803). A287.

The DAF Deputy General Counsel responded to the Deputy DoD GC, in a memorandum that distinguished *Dysart* and sought to bring Schwalier's case within *Marbury*. A173. DoD GC, however, continued to disagree with the DAF's position. By letter, dated March 24, 2005, DoD General Counsel, Mr. William Haynes, opined that DAF's action, correcting Schwalier's records, was *ultra vires*, beyond its authority and without legal effect. A170.

DAF General Counsel, Ms. Mary Walker, on March 30, 2005, advised Mr. Lineberger of Mr. Haynes' position and that his determination was binding on the DAF. A169. She recommended that her memorandum be provided to Schwalier for his comment and that, thereafter, the AFBCMR obtain an advisory on any such comments, remaining options and final action to be taken. *Id.*

On May 2, 2005, while the DAF was attempting to finalize its handling of Schwalier's records correction—consistent with DoD General Counsel's opinion— Acting SecAF Michael Dominguez, issued a first ever written directive memorandum establishing active duty general officer appointment procedures. The

11

memorandum *confirmed* existing general officer personnel policies that "[t]he Air Force will not suffer a vacancy in its [general] officer authorizations" and that the Air Force Senior Leaders Management Office (AFSLMO) "will verbally notify the officer [of the appointment date] with as much lead time as practicable, to allow the officer time to prepare for a ceremony." A402 (*compare with* A180 ("The consistent direction of successive . . . [SecAFs] has been to fill vacancies as soon as they occur. . . . Notification to an officer of his or her promotion date is normally accomplished by a member of this office [AFSLMO, formerly AFGOMO], or another person informed by this office, telephonically and/or by email.")) The May 2, 2005 memorandum *changed* Air Force policy to require, for the first time, that "AFSLMO will prepare, authenticate and publish a promotion order prior to the actual date of appointment [i.e., the effective ("pin on") date of promotion] and that "[a]bsent . . . Secretarial action, an officer is not promoted in the absence of a promotion order." A402.  A March 8, 2006 directive memorandum superseded the May 2, 2005 memorandum. The 2006 memorandum (1) incorporated the provisions of 10 U.S.C. § 525(e), by which certain general officers are not counted against authorizations; (2) provided that the Deputy Chief of Staff, Manpower and Personnel, rather than AFSLMO, would notify officers of their appointment date; and (3) eliminated the requirement that such notice had to be "verbal" (*i.e.*, "oral"). A404.

On May 11, 2005, Mr. Lineberger, forwarded DAF General Counsel's March 30, 2005, memorandum to Schwalier for comment. A195. Schwalier, through counsel, on July 1, 2005, provided legal arguments in support of the AFBCMR's recommendations and the Director, AFRBA's, October 6, 2004, correction of his records. A196.

Nevertheless, on August 19, 2005, Mr. Lineberger, Director, AFRBA, by memorandum, advised Schwalier that

> As previously advised, given the DoD General Counsel's role as the final legal authority for the Department of Defense, his determination is binding upon the Air Force. In view of this and since you are not seeking a correction of records that is within the purview of the AFBCMR, we are not in a position to take further action on your client's requests. This is the final Air Force decision on your client's application.

A201.

Schwalier's counsel, on November 16, 2005, wrote to Mr. Lineberger, to inquire whether DoD had ever "overruled" the AFBCMR in any other case. He also stated that his "take on the statute [10 U.S.C. § 1552(a)(4)] is that your opinion is final." A202.

Mr. Lineberger replied on December 27, 2005, to say

> Although I am not sure I would use the term 'overruled' to describe what occurred in the Schwalier application, I can inform you I know of no other case where the Department of Defense has told the AFBCMR that its attempted relief exceeded its legal authority. I am also not in a position to express either agreement or disagreement as

13

regards your belief that the AFBCMR statute rendered my purported decision final.

A203.

### 3.    2007 – 2008 Reconsideration AFBCMR Application

On September 24, 2007, Schwalier submitted a reconsideration application to the AFBCMR. A204– 400.  Schwalier's requested records correction was identical to that previously directed by Mr. Lineberger, Director, AFRBA, when acting for SecAF, on October 6, 2004. A207. The application made seven arguments in support of the request for reconsideration, identified injustices and complained of DoD OGC's interference with the DAF's previously directed correction of Schwalier's records. A204– 270.

Approximately two months later, on November 19, 2007, the AFBCMR again unanimously recommended the correction of Schwalier's records. A157. In contrast with its 2004 recommendations, which were based on its interpretation of the law and a determination of legal "error," the AFBCMR recommended that Schwalier's record be corrected because "the [1997] decision to remove the applicant's name from the CY 95 Major General promotion list caused an injustice." A155.  In reaching its favorable recommendations, the AFBCMR cited a lack of evidence of a performance failure on Schwalier's part and voluminous evidence that he "acted reasonably and prudently, based on what . . . [he] knew at that time." A156. Further, the AFBCMR found that Schwalier had "implemented

14

all identified force protection steps that he could, took steps to resource those that required resourcing and acted within the limits of his authority to have the remaining addressed." A155–56.  The AFBCMR also found that some of the information upon which its recommendation was based "[m]ay not have been available to those in the decision making process, but that only . . . [lent] further support for removing what clearly must now be seen as an injustice." A156.

The AFBCMR's recommendations were to correct Schwalier's records to reflect that: (1) he was not retired on September 1, 1997, in the grade of brigadier general, but, on that date, he was continued on active duty; (2) he was promoted to the grade of major general, effective and with a date of rank of January 1, 1997; (3) he applied for retirement under the provisions of AFI 32-3203 to become effective February 1, 2000; (4) his request was approved by a competent authority and (5) he retired in the grade of major general on February 1, 2000. A155–56.

Acting for SecAF, Joe Lineberger, Director, AFRBA, approved and adopted the AFBCMR's recommendations and, by memorandum, dated December 20, 2007, directed CSAF to correct the pertinent records of the Air Force in accord with those recommendations. A150.

The next day, on December 21, 2007, the DAF, by direction of the President, published Special Order AAG – 041 appointing Schwalier to the grade of major general, effective January 1, 1997. A406. Five days later, on December

15

26, 2007, AFGOMO, by SecAF's direction, published Special Order ACG –

000007, retiring Schwalier in the grade of major general, effective January 31,

2000. A407.

The correction of Schwalier's records, having come to the attention of the

DoD Principal Deputy General Counsel, he, on January 18, 2008, emailed the DoD

Comptroller to request that the Defense Finance and Accounting Service (DFAS)

be directed to make no payments to Schwalier based on the correction of his

records. A408.

SecAF Michael Wynne, by memorandum dated March 28, 2008, directed

Mr. Lineberger to rescind all corrections of Schwalier's records. SecAF Wynne

stated that:

> [t]he Acting [DoD] General Counsel advises that, notwithstanding the
> AFBCMR's position that this second recommendation is based on
> equity to remove an injustice while the first recommendation was
> based on interpretations of law and policy, the legal principals are the
> same for both the first [2004] and second [2007] AFBCMR
> recommendations. Thus, the Acting General Counsel concludes that
> the second AFBCMR recommendation and the Air Force's purported
> implementation of that recommendation, like the first AFBCMR
> recommendation, are *ultra vires* and without legal effect, and that all
> actions taken in implementation of this second AFBCMR
> recommendation are void. The Secretary of Defense agrees.

A22.

On April 3, 2008, Mr. Lineberger informed Schwalier of SecAF Wynne's

direction to rescind his December 20, 2007, directive "because the Acting General

Counsel of the Department of Defense believes the action by the AFBCMR was beyond the authority of the Board." A20. That same day, Mr. Lineberger rescinded his December 20, 2007, directive correcting Schwalier's record. A21.

On January 20, 2011, Appellant filed a complaint in the United States District Court for the District of Columbia primarily seeking injunctive, mandatory and declaratory relief under the APA related to two favorable records corrections decisions by SecAF, acting through the AFBCMR.  On March 14, 2012, the district court granted summary judgment in favor of the defendants.  *Schwalier v. Panetta, et al.*, 839 F. Supp. 2d. 75 (D.D.C. 2012).  Schwalier appealed the case to the United States Court of Appeals for the District of Columbia Circuit.  After full briefing and oral arguments, the D.C. Circuit held that it lacked jurisdiction because, although the complaint contained APA claims and sought specific equitable relief, including injunctive, mandatory and declaratory relief, it, nonetheless, was based, in part, on the Little Tucker Act.  *Schwalier v. Hagel, et al.*, 734 F.3d 1218 (D.C. Cir. 2013).  Thus, the D.C. Circuit transferred the appeal to the Federal Circuit, on November 15, 2013.

## SUMMARY OF THE ARGUMENT

In accordance with his statutory authority pursuant to 10 U.S.C. § 1552, SecAF's delegee twice corrected Schwalier's records, based on AFBCMR recommendations—first on the grounds of legal error and a second time on

equitable grounds pursuant to SecAF's explicit statutory authority to correct "injustices" in a military record. Each time, DoD GC interfered after the DAF records-correction process became "final and conclusive" as provided by 10 U.S.C. § 1552(a)(4) and forced the DAF to rescind directives ordering relief based upon the AFBCMR's unanimous recommendations. DoD GC acted arbitrarily and capriciously, running afoul of the Administrative Procedures Act, (APA) by violating 10 U.S.C. § 1552 and a number of binding regulations. The DAF similarly acted in violation of the APA, when it rescinded its prior administrative decisions without any statutory or regulatory basis for doing so.

As a threshold matter, Schwalier argues that the lower court erred in holding that the DoD and DAF's actions with regard to SecAF's 2004 records correction decision were not subject to APA review because Schwalier requested reconsideration by the AFBCMR under applicable regulations. Contrary to the court's holding, the DoD and DAF's actions with respect to both Schwalier's records corrections are subject to APA review.

Schwalier next argues that the Appellees' actions with regard to the reconsideration application were arbitrary, capricious and contrary to law. After detailing the legislative history and statutory and regulatory authority of the SecAF, acting through the AFBCMR, the analysis shifts to the Appellees' actions surrounding Schwalier's 2007 request for reconsideration. The 2007 records

18

correction decision represents DAF's exercise of its records correction authority in the purest sense. The AFBCMR unanimously recommended relief based on SecAF's equitable authority to correct records to remove an "injustice" and the SecAF's 2007 decision is free of the competing interpretations of the case law and policy regarding the legal sufficiency of Schwalier's appointment that permeated the 2004 records correction. According to 10 U.S.C. § 1552, SecAF's decision was "final and conclusive on all officers of the United States," including all DoD personnel, who violated the statute and binding regulations when the DoD GC ordered DFAS to withhold payment to Schwalier and coerced the DAF into rescinding its records-correction directive without any authority to do so.

The AFBCMR's 2004 records correction presents similar issues but focuses on the SecAF's statutory authority to correct Schwalier's records based upon a determination that his record contained an error. Nonetheless, SecAF's 2004 record correction decision was final and conclusive and prohibited the DoD GC from interfering with the SecAF's ability to carry out his statutory duties. Not only did the DoD GC violate federal statute, it contravened clear federal regulations and coerced the Director, AFRBA, SecAF's delegee, into exceeding his delegated authority and rescinding a valid records-correction order.

Schwalier next argues that it was reasonable for the AFBCMR to determine that there was a correctable legal error with respect to his January 1, 1997

promotion.  There were sufficient public acts to effectuate his promotion to major general in 1997 and the DAF was reasonable in making its determination that he had been promoted. The DAF's well-defined, DoD-approved promotion procedures contain public acts sufficient to effectuate Schwalier's promotion. The process is consistent with Federal Circuit precedent upon which DoD GC based his position, which dealt solely with the Department of the Navy's unique promotion procedures.

Finally, Schwalier argues that the lower court erred as a matter of law in broadly construing DoD GC's authority to interfere with SecAF's specific statutory mandate to correct an applicant's records based upon a finding of error or injustice. The plain language of 10 U.S.C. § 1552 explicitly confers record-correction authority on the secretaries of military departments and makes their decisions final and conclusive on all officers of the United States. The DoD's role is expressly limited to approving the regulatory scheme by which correction boards function. Further, the legislative history of section 1552 suggests that Congress intended the statute's final-and-conclusive provision to confer exclusive authority to military department secretaries, to the exclusion of other government agencies and offices such as DoD GC. Beyond the plain meaning and legislative history of the statute, basic statutory interpretation dictates that the specific, precise language of section 1552, as it relates to military records-correction authority, must override

the general statutory provisions establishing DoD GC's office and its function.

Further, implementing regulations are consistent with the plain meaning of section

1552 and effectively prohibited DoD GC from interfering with SecAF's final and

conclusive decisions.

## ARGUMENT

## STANDARD OF REVIEW

The Court reviews the trial court's grant of judgment upon the administrative

record without deference, applying the same standard of review that the trial court

applied.  *Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011).  The trial

court's legal conclusions will be reversed if they are incorrect as a matter of law,

and its factual findings will be reversed if clearly erroneous. *Heisig v. United*

*States*, 719 F.2d 1153, 1158 (Fed. Cir. 1983). Statutory or regulatory interpretation

is reviewed without deference. *Strickland v. United States*, 423 F.3d 1335, 1337

(Fed. Cir. 2005).

**1.    The lower court erred in holding that the DoD and DAF's actions with regard to the 2004 correction to Schwalier's records are not subject to judicial review.**

The DoD and DAF's 2004 actions are reviewable under the APA. The lower

court declined to conduct any APA review of the DoD and DAF's actions

regarding the initial 2004 records correction decision. Although the court found

21

that Schwalier's request for reconsideration rendered the 2004 actions both non-final and unreviewable, that holding conflicts with the law of a number of circuits.

The APA limits judicial review to "final agency action." 5 U.S.C. § 704. AFBCMR regulations permit applications for reconsideration "if the applicant submits newly discovered relevant evidence that was not available when the application was previously considered." 32 C.F.R. § 865.6. As a general rule, "[t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review." *Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 392 (1995). However, the underlying decision and accordant agency action are not therefore rendered unreviewable under the APA's arbitrary-and-capricious standard. This is reinforced by the language of the APA, which provides that the scope of judicial review of final agency action includes the power to review the intermediate and procedural agency actions leading up to the final challenged result. *See* § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). As a number of circuits have held, on review of a final agency action, intermediate actions, such as those related to Schwalier's initial 2004 favorable DAF correction, are subject to review. *See Smriko v. Ashcroft*, 387 F. 3d 279, 291 (3d. Cir. 2004) ("[O]ur review of final agency action, generally speaking, encompasses all of petitioner's contentions of legal error by the agency

22

at any stage of the agency's proceedings."); *Exxon Chemicals America v. Chao*, 298 F. 3d 464, 469–70 (5th Cir. 2002) (holding underlying agency remand order is subject to APA review along with subsequent final decision); *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002). ("[I]f reconsideration is denied, [the party may] challenge that denial as well as the agency's original order by filing a timely petition for review of both orders."); *Burns v. Director, Office of Workers' Compensation Programs*, 41 F.3d 1555, 1562 (D.C. Cir. 1994) (under APA previous non-final orders of Benefits Review Board were properly before court only when the final BRB order was appealed); *Clark v. Busey*, 959 F. 2d 808, 811 (9th Cir. 1991) (court of appeals' jurisdiction to review final action by Federal Aviation Administration encompassed jurisdiction to review at that time any procedural irregularities).

Here, there is no dispute that Schwalier's 2007 application was processed by the AFBCMR as a request for reconsideration. As the lower court correctly noted, the second submission was acknowledged by the AFBCMR as a request for reconsideration (A151, 155) and retained the same docket number as the 2004 initial application (A274). However, as argued above, although the 2007 reconsideration application rendered the actions surrounding the initial 2004 application nonfinal for the purposes of the timing of judicial review, it did not forever render those same underlying actions immune from APA review.

Schwalier was free to challenge agency actions with respect to the 2004 initial AFBCMR application, as well as agency action with respect to his 2007 reconsideration application.  This is important because the two underlying decisions and, thus, the substance of the subsequent agency actions, are materially different and warrant separate judicial review.  10 U.S.C. § 1552(a)(1) grants SecAF the authority to "correct an error *or* remove an injustice."  (Emphasis added).  Thus, whether there is a correctable error is an objective legal determination and, conversely, whether there exists an injustice is a subjective, discretionary and equitable determination.  Indeed, SecAF may grant relief to remove an injustice even if the personnel or administrative actions under review were legal.

The AFBCMR's unanimous conclusion, in 2004, recommended records corrections to reflect that Schwalier was promoted to major general, effective January 1, 1997, and was retired, as a major general, on February 1, 2000, based upon a finding a finding of "administrative error."  A32.  Conversely, in 2007 the AFBCMR unanimously recommended relief because "the [1997] decision to remove the applicant's name from the CY 95 Major General promotion list caused an injustice." A155.  The recommendation was based, in part, on the AFBCMR's finding that there was a lack of evidence of a performance failure on Schwalier's part and voluminous evidence that he "acted reasonably and prudently, based on

what . . . [he] knew at that time." A156. Further, the AFBCMR found that

Schwalier had "implemented all identified force protection steps that he could,

took steps to resource those that required resourcing and acted within the limits of

his authority to have the remaining addressed." A155–56.  The AFBCMR's two

recommendations were clearly rendered under separate statutory bases and present

materially different issues, one legal, the other equitable.  They are both reviewable

under the APA.

**2.**     **The Appellees' actions, with regard to the 2004 (initial) and 2007
          (reconsideration) corrections of Schwalier's records, were arbitrary,
          capricious and contrary to law.**

     **A.**     **SecAF's statutory and regulatory authority to correct military
          records pursuant to 10 U.S.C. § 1552.**

Congressional authority to establish military records correction boards is

rooted in the basic constitutional principle that Congress shall have the power "[t]o

make Rules for the Government and Regulation of the land and Naval forces."

U.S. Const. art. I, § 8, cl. 14. As the U.S. Supreme Court noted, "It is clear that the

Constitution contemplated that the Legislative Branch have plenary control over

rights, duties, and responsibilities in the framework of the Military Establishment,

including regulations, procedures, and remedies related to military discipline . . . ."

*Chappell v. Wallace*, 462 U.S. 296, 301 (1983).

Congress enacted 10 U.S.C. § 1552, which sets forth the statutory authority for the secretaries of military departments to correct military records through civilian boards. Upon timely application and consideration, the statute provides:

> The Secretary of a military department *may correct any military record* of the Secretary's department when the Secretary considers it necessary *to correct an error or remove an injustice*. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1)(emphasis added). A product of the Legislative Reorganization Act of 1946, Pub. L. No. 79-601, § 207, 60 Stat. 812, 837 (1946), the statute was intended to relieve Congress of the burden of considering private bills to correct alleged errors and injustices in military records. *See Ogden v. Zuckert*, 298 F.2d 312, 314 (D.C. Cir. 1961).

Section 1552 explicitly provides that "[e]xcept when procured by fraud, a correction under this section is ***final and conclusive on all officers of the United States***." 10 U.S.C. § 1552(a)(4)(emphasis added). Originally, the statute contained no provision regarding the finality of a military department secretary's administrative action. *See Ashe v. McNamara*, 355 F.2d 277, 281 (1st Cir. 1965). Shortly after the statute was enacted, however, "the Comptroller General refused to recognize a change in the type of a discharge thus accomplished as affecting forfeiture of monetary benefits which attended the original discharge." *Id.* (internal citation omitted). In response to the Comptroller General's refusal, Congress

26

amended the statute to include specific language that monetary settlements resulting from a correction of records "shall be final and conclusive on all officers of the Government, including review by the courts of the United States, except when procured by fraud." *Id.* (internal citation omitted). Further, a stated purpose of the amendment was to "preclude a continuance of vexatious appeals, not so much to the board, but to other agencies and other offices, to deal with these matters with some expeditiousness and finality . . . ." *See* Keith A. Rosenberg, comment, *The Relationship Between Military Correction Boards and the Comptroller General: Finality of Correction Board Decisions Under 10 U.S.C. Section 1552*, 22 Am. U. L. Rev. 222, 233 (1972) (quoting Hearings on H.R. 1181 Before Subcomm. No. 3 of the House Comm. on Armed Services, 82d Cong., 1st Sess., Ser. 19 at 360 (1951)). Clearly, the legislative history indicates that Congress intended the final-and-conclusive provision to vest exclusive authority to determine the merits of records-correction requests with the military department secretaries, to the exclusion of other government agencies. H.R. Rep. No. 449, 82d Cong., 1st Sess. at 3 (1951); A426. Later, the provision precluding judicial review was removed and the final-and-conclusive provision was expanded to record corrections generally and not only monetary settlements. *Id.*

According to a congressional report from the House Armed Services Committee (HASC), accompanying the amendatory bill, a primary concern was to

avoid placing applicants whose requested relief was granted by a corrections board "in a position of having a right without remedy." H.R. Rep. No. 449, 82d Cong., 1st Sess. at 2 (1951); A425. The HASC made clear that a determination on the merits of a military correction board application was reserved solely for the service (military) departments: "Congress having established the Boards for Correction of Military Records with each of the service departments, the . . . authority to determine the merits of each particular case should be reserved to such Boards . . . ." *Id.* at 3.

Each military department is given the authority to issue regulations and procedures to govern the operation of it respective corrections board, which must be approved by the SecDef. 10 U.S.C. § 1552(a)(3). Mandatory regulations "have the force and effect of law." *Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *see Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("it is incumbent upon agencies to follow their own procedures," even when those procedures "are possibly more rigorous than otherwise would be required.").

Appointed by the President, the SecDef is subject to the direction of the President and has "the authority, direction, and control over . . . [DoD]," which includes drafting and implementing DoD regulations. *See* 10 U.S.C. § 113. Section 1552(a)(3) only provides DoD with approval authority over the military department secretaries' own departmental regulations and procedures issued to

govern the records correction process and procedure. *Id.* § 1552(a)(3). Further, DoD exercises limited authority over correction boards by its own directives, as outlined in Department of Defense Directive 1332.41. That Directive explicitly provides that "the Secretaries of the Military Departments have the authority for final decision and the responsibility for the operation of their respective BCMRs . . . ." U.S. Dep't of Defense, Dir. 1332.41, Boards for Correction of Military Records (BCMRs) and Discharge Review Boards (DRBs), para. 4.2 (Mar. 8, 2004) [hereinafter DoD Dir. 1332.41]. In approving military department regulatory schemes governing records corrections, DoD did not reserve to itself the authority to act as another tier of substantive administrative review that would allow it to interfere with final-and-conclusive records corrections decisions. *See* AFI 36-2603.

Relevant to the immediate case, DoD-approved regulations governing the operation of the AFBCMR are codified at 32 C.F.R. §§ 865.0–865.8 and are implemented by AFI 36-2603. The AFBCMR consists of civilians in the executive part of the DAF, who are appointed and serve at the pleasure of the SecAF. Three members constitute a quorum of the AFBCMR. 32 C.F.R. § 865.1. The AFBCMR considers all applications properly brought before it and, as appropriate, either (1) directs correction of military records to correct an error or to remove an injustice or (2) recommends such correction to the SecAF. *Id.* § 865.2(a). The AFBCMR will not deny an application "on the sole ground that the issue already has been decided

by . . . [SecAF] or the President of the United States in another proceeding." *Id.* §

865.4(k).

In certain instances, the AFBCMR acts for the SecAF and its decision is

final when: (1) it denies an application or (2) it grants an application, in whole or in

part, when the relief was recommended by the official preparing the advisory

opinion, was unanimously agreed upon, and does not involve appointment or

promotion requiring Senate confirmation. AFI 36-2603 para. 4.10. In all other

cases, the AFBCMR's recommendations are sent to the SecAF or his delegee, who

possesses final decision-making authority. *Id.* para. 4.10.1. As the final decision-

making authority, "[t]he Secretary may direct such action as he or she deems

appropriate on each case . . . ." *Id.* para. 5.

Notably, the SecAF has delegated the authority to grant or deny applications

to the Assistant Secretary of the Air Force (Manpower, Reserve Affairs,

Installations and Environment) (ASAF (MI)), except in cases involving correction

of records affecting security clearance or access to classified information or when

SecAF has explicitly reserved decision authority. Secretary of the Air Force Order

253.1 (May 16, 2001)[hereinafter SAFO 253.1]; A342–44. However, SecAF has

placed limitations on ASAF (MI)'s re-delegation authority. Of particular relevance

to the immediate case, ASAF (MI) cannot re-delegate the authority to deny an

application when the AFBCMR has unanimously recommended to correct an applicant's record. SAFO 253.1 para. 4(b), A343.

Once the SecAF or his delegee has rendered a final records correction decision, the Director, AFRBA, informs the applicant of the decision and sends a directive, ordering corrective records actions, to CSAF for necessary administrative action. AFI 36-2603 para. 7.

**B.  The Appellees' actions, with regard to the 2007 (reconsideration) correction of Schwalier's military records, were arbitrary, capricious and contrary to law.**

*(1)  The Director, AFRBA's, December 20, 2007, correction of Schwalier's record was "final and conclusive" within the meaning of 10 U.S.C. § 1552(a)(4) and binding regulations.*

The record is clear that each time DoD interfered with a favorable DAF corrections action it did so after the decision-making process had culminated in a final correction within the meaning of 10 U.S.C. § 1552(a)(4).

According to 10 U.S.C. § 1552 and Air Force regulations, a unanimous AFBCMR recommendation to grant relief reaches a point of finality and conclusiveness when the SecAF or his delegee, issues a directive, based upon the AFBCMR's recommendations. Indeed, at that point, SecAF has discharged all responsibilities pursuant to the regulation and only administrative matters related to carrying out the directive remain, such as preparing promotion or retirement orders. AFI 36-2603 para. 7. For example, a required action of the Director,

31

AFRBA, is to "send decisions requiring corrective action to the Chief of Staff, US Air Force, for necessary action." *Id.* para. 7.1.

Schwalier's 2007 records correction reached the point of finality and conclusiveness after SecAF's delegee, Director, AFRBA, approved and adopted the AFBCMR's unanimous recommendation. Schwalier submitted a request for reconsideration on September 24, 2007. A204. The AFBCMR unanimously recommended to grant the relief requested in the reconsideration application on November 19, 2007. A151–157. Importantly, unlike its 2004 recommendation to correct an error, the AFBCMR's 2007 recommendation was to grant relief pursuant to SecAF's equitable authority to "remove an injustice" pursuant to 10 U.S.C. § 1552(a)(1) and was not subject to the lengthy debate with DoD GC over the legal sufficiency of Schwalier's appointment. A151, A156.

On December 20, 2007, the Director, AFRBA, directed the correction of Schwalier's record in accordance with the AFBCMR's recommendations. A182. The Director's action was authorized by authority properly delegated from SecAF to ASAF (MI), who then re-delegated the authority to grant a unanimous AFBCMR recommendation to the Director, AFRBA. *See* SAFO 253.1; A342. At that point, the SecAF, through his delegee, had discharged all of his responsibilities pursuant to the regulations and only administrative matters related to carrying out the directive remained. *See* AFI 36-2603 para. 7. Thereafter, DAF published

appointment (promotion) and retirement orders consistent with SecAF's delegee,

Director, AFRBA, decision, which approved and adopted AFBCMR's

recommendations. A406–07. Any suggestion that the DAF's decision was not final

within the meaning of section 1552(a)(4) and the decision-making process was

ongoing would be incorrect.

> ### (2)    DoD, by interfering with and ordering the invalidation of SecAF's actions, violated 10 U.S.C. § 1552(a)(4) and binding regulations.

"Except when procured by fraud, a correction under this section is *final and*

*conclusive on all officers of the United States*." 10 U.S.C. § 1552(a)(4)(emphasis

added). Therefore, when the Director, AFRBA, issued his directive on December

20, 2007, the corrections ordered therein became final and conclusive on all

officers of the United States within the meaning of section 1552(a)(4). It follows

that the same authority bound DoD to SecAF's decision to correct Schwalier's

records and all actions by DoD and SecAF, occurring after the decision had been

made final and conclusive, violated federal statute.

Nonetheless, when the DAF's final-and-conclusive correction came to the

attention of the DoD Principal Deputy General Counsel, he, on January 18, 2008,

emailed the DoD Comptroller to request that DFAS be directed to make no

payments to Schwalier based on the correction of his records. A408. However,

DFAS was similarly bound by the DAF's final and conclusive decision.

33

The "final and conclusive" language in section 1552 was added as a response to the Comptroller General's ". . . refuse[al] to recognize a change in the type of a discharge thus accomplished as affecting forfeiture of monetary benefits which attended the original discharge." *See Ashe v. McNamara*, 355 F.2d 277, 281 (1st Cir. 1965) (internal citation omitted). In response, Congress amended the statute to include specific language that monetary settlements resulting from a correction of records "shall be final and conclusive on all officers of the Government, including review by the courts of the United States, except when procured by fraud." *Id.* (internal citation omitted).

According to a congressional report accompanying the amendatory bill, "The Committee did not feel that the Congress intended to grant the authority to correct the records and deny the authority to make monetary payments which accrued as a result of the correction." H.R. Rep. No. 449, 82d Cong., 1st Sess. at 2 (1951); A418–23. The Comptroller General argued that "the question of jurisdiction of the Boards for Correction of Military Records, and the legality of such reward, should be within [the Comptroller General's] purview, in addition to the normal responsibility to audit such payments." *Id.* The Committee roundly rejected this argument, stating "Congress having established Boards for the Correction of Military Records within each of the service departments, the jurisdiction of such Boards as well as the authority to determine the merits of each

particular case should be reserved to such Boards, at the exclusion of the Comptroller General." *Id.* at 3. DFAS's refusal to make monetary payments as directed by DoD OGC is so factually similar to the Comptroller General's action that it forecloses any suggestion that DoD's interference was proper.

Beyond the matter of monetary claims, it was Congress's explicit intent to preclude *any* government agencies, other than the military departments, acting through their respective secretaries, from the considering the merits of a correction board's decision. *Id.* at 2 ("Congress having established the Boards for Correction of Military Records with each of the service departments, the . . . authority to determine the merits of each particular case should be reserved to such Boards . . . ."). Therefore, independent of DFAS's unlawful action, the final-and-conclusive provision precluded all interference actions by DoD OGC, following the final decision of Director, AFRBA, the SecAF's delegee, acting through the AFBCMR.

### (3)    *DAF, by rescinding and reversing a final and conclusive correction of Schwalier's records, violated 10 U.S.C. § 1552(a)(4) and binding regulations.*

On April 3, 2008, at the direction of the SecAF, the Director, AFRBA, issued a directive rescinding and reversing his prior decision to grant relief. A20, 21. Just as DoD was bound by the final decision to correct Schwalier's records, any act by DAF contrary to that final decision, after the date the correction was

35

finalized, violated 10 U.S.C. § 1552(a)(4)'s final-and-conclusive provision. No

regulatory provision allows the SecAF or his delegee to issue a final decision and

later rescind and reverse it. Without any clear exception, the decision is binding on

all DAF personnel. As such, the Director, AFRBA's, April 3, 2008, rescission of

the December 20, 2007, directive violated 10 U.S.C. § 1552(a)(4) and 32 C.F.R. §

865, and AFI 36-2603.

**C.    The Appellees' actions, with regard to the 2004 (initial) correction of Schwalier's military records, were arbitrary, capricious and contrary to law.**

> *(1)    The Director, AFRBA's, October 6, 2004, correction of Schwalier's record was a "final and conclusive" decision under 10 U.S.C. § 1552(a)(4) and applicable regulations.*

A unanimous recommendation of the AFBCMR to grant relief reaches a

point of finality when SecAF or his delegee, issues a directive based upon the

AFBCMR's recommendations. 32 C.F.R. §§ 865.05, 865.07. Just as Director,

AFRBA's, December 20, 2007, directive correcting Schwalier's record was final

within the meaning of 10 U.S.C. § 1552(a)(4), so too was the Director AFRBA's

October 6, 2004, directive final. The AFBCMR recommended unanimously to

grant Schwalier's application and, thereafter, the Director, AFRBA, directed that

Schwalier's record be corrected in accordance with the AFBCMR's

recommendations. A23. The Director's action was authorized pursuant to authority

properly delegated by the SecAF to ASAF (MI), who then re-delegated the

authority to approve and adopt a unanimous AFBCMR recommendation to the Director, AFRBA. *See* SAFO 253.1; A342–44. The Director, AFRBA's, October 6, 2004, directive represented the last act required to finalize a decision under the governing regulation; all that remained were administrative duties prescribed to carry out the directive. Indeed, DAF personnel proceeded under the premise that the directive represented the final action on Schwalier's application. Then-SecAF James Roche specifically stated in an affidavit:

> I was aware that the AFBCMR made these recommendations and that, on my behalf as the SecAF, the Director, AFRBA, granted and directed the implementation of these recommendations, as these actions occurred. I approved this granting of Terryl J. Schwalier's favorable AFBCMR recommendations by the Director, AFRBA, as my lawful designee when he granted those recommendations; and believed then, and believe now, that the granting of those recommendations by the Director, AFRBA, was a final decision by me as SecAF that was legally binding on the Air Force. I would have granted those recommendations myself personally if I had ruled on this matter instead of the Director, AFRBA, doing so.

A272.

Further, the Director, AFRBA, sent his directive to the CSAF for necessary action pursuant to AFI 36-2603 para. 7.1. A23. This transmittal, characterized in the regulation as an "Action After Final Decision," is only triggered once a final decision has been rendered. *See* AFI 36-2603 para. 7.1. In light of the regulations and facts of this case, DAF's 2004 correction decision was clearly final within the meaning of 10 U.S.C. § 1552(a)(4).

**(2)    DAF, by rescinding and reversing a final and conclusive correction of Schwalier's records, violated 10 U.S.C. § 1552(a)(4), 32 C.F.R. § 865 and AFI 36-2603.**

As argued above, the unanimous 2004 decision to correct Schwalier's record became "final and conclusive" when the Director, AFRBA, issued his directive based upon the AFBCMR's recommendations on October 6, 2004. Yet on August 19, 2005—ten months after a final decision had been rendered—the Director, AFRBA, issued a directive rescinding and reversing his prior decision to grant relief. A201.

Just as DoD was bound by the Director, AFRBA's final decision to correct Schwalier's records, so too was the DAF. Any act by DAF, after the date the correction was finalized, violated 10 U.S.C. § 1552. Further, no regulatory provision allows SecAF or his delegee to issue a final decision and later rescind and reverse it. Without any clear exception, the decision is binding on all DAF personnel. As such, the Director, AFRBA's August 19, 2005, rescission violated 10 U.S.C. § 1552(a)(4), 32 C.F.R. § 865, and AFI 36-2603.

**(3)    The Director, AFRBA's, August 19, 2005 denial of Schwalier's AFBCMR application violated SAFO 253.1 para. 4(b).**

SAFO 253.1 para. 4(b) provides that ASAF (MI) cannot re-delegate the authority to deny an application, when the AFBCMR has unanimously recommended a correction. A342–344. In other words, only the SecAF or ASAF

38

(MI), not the Director, AFRBA, has the authority to deny an application when the AFBCMR has voted unanimously to grant relief. Here, the AFBCMR's unanimous recommendation to correct Schwalier's record cancelled the Director, AFRBA's authority under SAFO 253.1 para. 4(b) to deny Schwalier's application. Notwithstanding the fact that the Director, AFRBA's, denial action violated the final-and-conclusive provision in 10 U.S.C. § 1552, his action was also in violation SAFO 253.1 para. 4(b) and, thus, had no legal effect. If there were to be a denial following a unanimous AFBCMR recommendation to grant relief, only the SecAF or ASAF (MI) had authority to do so—not the Director, AFRBA.

3.  **The AFBCMR reasonably found that Schwalier was promoted effective January 1, 1997 and the President's removal was untimely.**

According to 10 U.S.C. § 624(c), appointments to higher grades are made "by the President, by and with the advice and consent of the Senate." *Marbury v. Madison*, the hallmark case describing the contours of the appointment process for Senate-confirmed officers of the United States, held that actions required for an officer to be appointed to office are (1) the President's nomination; (2) the Senate's confirmation; and (3) the President's appointment. 5 U.S. 137, 155–56 (1803). *Marbury* provides that the President's power over an officer ceases—and the appointment is effectuated—when the "last act to be done by the president" has been performed. *Id.* at 157. For the judicial officers in *Marbury*, the Presidential appointment occurred at the moment the President signed a commission, but the

Court made clear that the signing of a commission is not required: "[i]f an appointment was to be evidenced by any public act, other than the commission, the performance of such public act would create the officer." *Id.* at 156. The President can delegate the authority to appoint military officers to the military department secretaries. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 90 (1953) ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President. . . . Petitioner, like every other conscript, was inducted as a private. To obtain a change of that status requires appointment by or under authority of the President."). Accordingly, the military department secretaries are permitted to act with the authority of the President following confirmation by the Senate of the President's nomination. *See Dysart v. United States*, 369 F.3d 1303, 1312–13 (Fed. Cir. 2004).

As discussed by the 2004 AFBCMR (A158–67) and DAF Deputy General Counsel (A173–78), in Schwalier's case, the DAF utilized a well-defined, DoD-approved, process by which officers were promoted to brigadier or major general, which is significantly similar to the procedure in place during the 1995–97 timeframe. First, pursuant to 10 U.S.C. § 611(a), a selection board is convened and recommends promotion of officers to the next higher permanent grade. When a selection board report is approved by the President, the names of officers approved for promotion (within a competitive category) are placed on a promotion list and

those nominations are forwarded by the President to the Senate for confirmation.
A180. After Senate confirmation, officers are promoted in order of seniority as
vacancies or "headroom" occurs. *Id.* As soon as a vacancy opens, it is filled with
the next senior officer on the promotion list. The officer is notified and promoted
unless the officer declines the promotion. *Id.* (citing AFI 36-2501; 10 U.S.C. §
626(a)). Notification is accomplished by a member of AFSLMO, or another person
informed by AFSLMO, by telephone or email approximately 7–10 days before the
established promotion date; no written notice is required. *Id.* At the time Schwalier
was given a promotion date, the promotion was deemed to have occurred on the
established promotion date, as notified, without any further action. *Id.* According
to Col Kimberly Toney's affidavit, "A written [appointment] order is 'cut' or
published in the Air Force and *delivered after the actual promotion date*." *Id.*[3]
(emphasis added)

Under 10 U.S.C. § 624 and AFI 36-2501 para. 12.3, promotions can be
delayed for cause. SecAF has authority for initial delays for up to six months and
any further delay in excess of six months must be authorized by SecAF (with

---

[3] The affidavit at A180 is ambiguous. With respect to the publishing ("cutting") of
appointment orders, the affidavit is not clear as to when that is accomplished.
However, the affidavit is clear that the order *is delivered* after the promotion
(appointment) date. *See* A409–17. None are retroactive, *i.e.*, the publication dates
all predate the promotion (appointment) date.

written notification to the officer). 10 U.S.C. § 624(d); *see also* AFI 36-2501 para. 12.3.

Pursuant to 10 U.S.C. § 629, "[t]he President may remove the name of any officer from a list of officers recommended for promotion by a selection board convened under this chapter." The D.C. Circuit has held that the President's statutory power to remove a name from the promotion list ceases only on the date "the officer is actually promoted." *Millican v. United States*, 744 F. Supp. 2d 296, 310 (D.C. Cir. 2010).

As previously argued, the authority of the Director, AFRBA, to grant final-and-conclusive relief, binding on officers of the United States, stands as the ultimate issue in this case. Nonetheless, against the constitutional, statutory and regulatory framework above, a significant issue is whether Schwalier was promoted to major general *by authority of the President, before the President acted to remove his name from the promotion list*. This issue was of significant importance for the first DAF correction in 2004, which granted relief based upon the AFBCMR's factual and legal determinations, *inter alia*, that: (1) Schwalier's correct promotion date was January 1, 1997; (2) the six-month delay terminated on June 30, 1997; (3) the July 31, 1997 removal of Schwalier from the major general promotion list was without effect, since that action was taken outside the permissible six-month period; and (4) Schwalier had been promoted on January 1,

1997, by operation of law. A32. The AFBCMR reconsideration, in 2007, recommended relief based upon the Board's separate authority to correct injustices and was not subject to the lengthy debate on the legal sufficiency of Schwalier's appointment. A154–56.

As the AFBCMR found and SecAF's delegee approved and adopted the finding, that Schwalier's effective promotion date was January 1, 1997 and, as such, the six-month delay of his promotion ended on June 30, 1997—one month prior to the President's removal action. Schwalier was recommended for promotion to major general by the Calendar Year 1995 Major General Selection Board and confirmed by the Senate on March 14, 1996. A27, 32–33. AFGOMO, consistent with general officer personnel policy, would determine a future date, on which Schwalier's appointment would occur and his promotion would become effective. A180. The AFGOMO database indicated there was "headroom" for Schwalier to be promoted on January 1, 1997. A128. The longstanding practice of SecAF was to promote as soon as a vacancy occurred. A180; *see also* A402–03, A404–05. Based on the expectation that Schwalier would be promoted on January 1, 1997, Gen Moorman, VCSAF, called Schwalier, *at his home*, on December 20, 1996, and advised him to postpone for 30 days the pin-on of his new grade. A124. Further, as concluded by DAF Deputy General Counsel Kipling At Lee, "It is beyond issue that the correct promotion date for Schwalier was January 1, 1997 . . . and that

43

General Schwalier was informed of this." A177.[4] Thus, because Schwalier's promotion date was January 1, 1997, the expiration of six-month delay occurred at midnight on June 30, 1997—one month prior to the date that SecDef Cohen recommended to the President that he remove Schwalier's name from the promotion list.

There is no question that the first two steps of the appointment process— Presidential nomination and Senate confirmation—had been met in Schwalier's case. The main dispute is focused on whether there was a public act sufficient to satisfy the third step of presidential appointment, before the President acted to remove Schwalier's name from the promotion list. Under *Marbury*, "[i]f an appointment was to be evidenced by any public act, other than the commission, the performance of such public act would create the officer." *Marbury*, 5 U.S. at 156. In this regard, DoD OGC opined that "[a] written order issued by an authorized official that reflects promotion on a specific date . . . [and] would be adequate to complete the third step in the appointment process." A267–68. The DoD General Counsel argued that Schwalier did not "obtain" the requisite public act by the President and cited *Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004) for support. A286. *Dysart* dealt with Navy promotion procedures, which require that a

---

[4] Mr. At Lee based his conclusion on a November 5, 2003 memorandum from SAF/DP entitled *Promotion Effective Date to Major General for Brigadier General Terryl J. Schwalier*, *etc*. However, the memorandum was not included in the certified administrative record. *See* A177.

Navy official, the Special Assistant for Flag Officer Management and Distribution, by authority of the Secretary of the Navy, sign a letter of appointment to effectuate appointment. *Dysart*, 369 at 1308. The letter is then issued to the appointee along with a certificate of appointment and the appointee is deemed to have accepted such appointment on the date on which the appointment is made unless he expressly declines. *Id.* The court held that "the signing and issuance of a letter of appointment is the final public act for a naval officer to be promoted to rear admiral." *Id.* at 1313. The *Dysart* court's holding was based upon their analysis of statutory and regulatory requirements specific to naval promotions. Nowhere does the court suggest that a letter of appointment is required for promotions in all military departments.

DoD-approved Air Force promotion procedures are different in one key respect: they do not require either a letter of appointment or a certificate of appointment to effectuate a promotion. A180. Rather, following Presidential nomination and Senate confirmation, promotion occurs upon the creation of a vacancy. *Id.* The next officer in line is notified of the promotion date and absent express declination, the officer is promoted on that date. *Id.* Contrary to Navy policy, no written certificates or letters of appointment are required prior to the promotion becoming effective. *Id.* Again, according to Col Kimberly Toney's affidavit, a written order is *published* and then delivered after the actual promotion

date. *Id.* However, as explained *supra* note 3, it appears that only the delivery of the written order may occur after the date of promotion, while the order was "cut" (or published) beforehand, in advance of the date of promotion (*i.e.*, appointment). The DAF operated under this scheme for years prior to Schwalier's promotion date. *Id.* If Schwalier's promotion had occurred on January 1, 1997, as planned, AFGOMO would have published an appointment order, thus meeting *Marbury's* third requirement for a public act. A180; *see, e.g.,* A406.

DAF promotion procedures suffice as public acts under *Marbury* and *Dysart.*[5] All significant portions of the process are publicly known or ascertainable, as part of a routine statutory and regulatory procedure: establishment of a promotion list; lack of deviation from the list without secretarial action determination of dates upon which vacancies will occur; notification to officers of their effective promotion dates based upon vacancy dates; and publication of promotion (appointment) orders. All of these actions are clearly public and carried

---

[5] DoD GC found DAF procedures constitutionally insufficient. A288. He based his opinion on his reading of Col Kimberly Toney's affidavit. A180. He understood her position to be that all DAF appointment orders were retroactive. However, Col Toney's affidavit is ambiguous. *See supra n.* 3. Assuming that Col Toney intended to say that all DAF appointment orders were retroactive, she was wrong. A409–17. It appears that the only act, which may occur after the promotion date, is delivery of the already published appointment order.

out under procedures approved by SecAF with the authority of the President.[6]

Therefore, at the expiration of the six-month delay period, on June 30, 1997,

Schwalier's appointment was effectuated, with all constitutional requirements met,

and the President's removal was untimely and a legal nullity. *See Millican*, 744 F.

Supp. 2d at 310 (President's statutory removal power ceases on the date "the

officer is actually promoted.")

The DoD GC argued that there are no appointments by "operation of law"

according to *Dysart*, 369 F.3d 1303. A286–87. The term "operation of law" as

articulated by *Dysart* court regarding a naval officer, means to be automatically

promoted by the effect of legislation and without satisfying the presidential

appointment requirement (i.e. commission or public act). *Dysart*, 369 F.3d at

1313–14. DoD GC's reading of *Dysart* necessarily presupposed that Schwalier's

appointment was effectuated automatically and *without* satisfying all three steps of

the appointment process. However, as demonstrated above, all requirements for the

appointment had been met and Schwalier's appointment was not actually an

automatic promotion in violation of *Dysart*, but one that complied with *Dysart's*

requirement of a public act in accordance with *Marbury*.

---

[6] It bears noting that on December 21, 2007, the DAF ultimately published Special Order AAG-041, appointing Schwalier to the grade of major general, by direction of the President, effective January 1, 1997. A406.

Alternatively, assuming *arguendo* that appointment orders are required despite the specifics of DAF promotion policy, such orders were imminent, following the October 6, 2004, directive by the Director, AFRBA. The directive to CSAF, ordering that Schwalier's records be corrected to show that he was promoted effective January 1, 1997, placed Schwalier in a status *quo ante*. Indeed, the authority to retroactively correct records is a primary function of the secretarial records correction process. Following the directive, among other administrative details, the DAF would have issued a promotion (*i.e.* appointment) order pursuant to Air Force policy. *See* A180. Although retroactive, Schwalier would have received appointment orders.[7]  The fact is that in 2004 AFBCMR and DAF reasonably determined that Schwalier was promoted effective January 1, 1997 and the President's removal was untimely.

**4.    The lower court erred in holding that 10 U.S.C. § 8013 and 10 U.S.C. § 140(b) permitted DoD GC to interfere with a valid SecAF records correction decision, pursuant to 10 U.S.C. § 1552.**

The statute governing the correction of military records and its implementing regulations did not permit DoD to interfere with a valid and final SecAF records correction decision made through the AFBCMR process. Although

---

[7] In addition to the publication of appointment orders, other public acts evidence the appointment to include (1) the promotion (*i.e.* investiture) ceremony, at which the appointment order is read and the promotee's superior officer presides (*see* A402–03, A404–05) and (2) the wearing of the insignia of the higher grade to which the promotee has been appointed.

the lower court broadly reasoned that because the SecAF operates generally "subject to the authority, direction and control of the Secretary of Defense," 10 U.S.C. § 8013, DoD OGC had broad authority to involve itself in SecAF's 2007 records correction,[8] the court ignored basic principles of statutory interpretation and the clear continuity of implementing regulations. The lower court cited DoD GC's statutory role as "chief legal officer of the Department of Defense" who "shall perform such functions as the Secretary of Defense may prescribe." *Schwalier*, 839 F. Supp. 2d at 84 (citing 10 U.S.C. § 140(b)). The district court looked to a DoD directive for the SecDef's prescriptions, noting that one of DoD GC stated "functions" is to "[p]rovide advice to the . . . Secretary of Defense regarding all legal matters . . . within the Department of Defense" and "determine the DoD position on specific legal problems, and resolve disagreements within the DoD on such matters." *Id.* at 84 (quoting U.S. Dep't of Defense, Dir. 5145.01, General Counsel of the Department of Defense paras. 3.1 & 3.10 (May 2, 2001)[hereinafter DoD Dir. 5145.01]). Thus, according to the lower court, DoD GC's function to resolve disagreements on legal matters acts as a limitation on SecAF's record-correction authority because SecAF is subject to the authority, direction and control of the SecDef. The lower court's holding is flawed for a variety of reasons addressed below.

---

[8] The lower court explicitly limited its APA analysis to the DoD and DAF actions that occurred in early 2008. *Schwalier*, 839 F. Supp. 2d at 83.

### A.   The plain meaning of 10 U.S.C. § 1552 prohibited DoD OGC from interfering with DAF records corrections.

Section 1552 grants military department secretaries the power to "*correct any military record* of the Secretary's department when the Secretary considers it necessary *to correct an error or remove an injustice*." 10 U.S.C. § 1552(a)(1) (emphasis added). Section 1552 expressly provides that "[e]xcept when procured by fraud, a correction under this section is *final and conclusive on all officers of the United States*." 10 U.S.C. § 1552(a)(4)(emphasis added). Thus, Congress explicitly provided that the SecAF's authority to make a final decision on the narrow question of correction of military records could not be overridden by any other officer in the Executive Branch, including SecDef. The construction of the statute is reinforced and confirmed by DoD and Air Force implementing regulations.

"The words of a governing text are of paramount concern, and what they convey in their context, is what the text means."  Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012).  The statute does not provide an exception for instances in which DoD GC disagrees with a final records correction decision.  The only exception pertains to records corrections procured by fraud, which is not at issue here.  In short, the text means what it says—that unless procured by fraud, a records correction decision is final and conclusive on all officers of the United States, including DoD personnel.  *Cummings v. Dep't of*

50

*the Navy*, 279 F.3d 1051, 1055 (D.C. Cir. 2002)("[S]tatutory text remains the best evidence of congressional intent.")

The statute explicitly contemplates the boundaries of DoD's role in the records-correction process: "Corrections under this section shall be made under procedures established by the Secretary concerned. In the case of the Secretary of a military department, those procedures must be approved by the Secretary of Defense." 10 U.S.C. § 1552(a)(3). Thus, by only giving the SecDef approval authority over the records-correction procedures, the provision shows that Congress did not intend DoD to have any substantive role in the decision to correct records.

Tellingly, in approving military department regulatory schemes governing records corrections, SecDef did not reserve for himself or DoD GC any additional layer of substantive administrative review or oversight that would allow them to interfere with a military department secretary's final-and-conclusive decision to correct an applicant's records. *See* AFI 36-2603; 32 C.F.R. §§ 865.0–865.8. DoD's own regulations effectively relinquish such authority. Department of Defense Directive 1332.41 explicitly provides that "the Secretaries of the Military Departments have the authority for *final* decision and the responsibility for the operation of their respective BCMRs . . . ." DoD Dir. 1332.41 (emphasis added).

The directive does not set forth any role for DoD GC in the operation of military correction boards. *See id.*

Further, the statutes give the military department secretaries great discretion to correct records. Not only was SecAF authorized to correct errors, but also has wide discretion to grant relief "when the Secretary considers it necessary to . . . remove an injustice." 10 U.S.C. § 1552(a)(1). The additional layer of discretionary authority recognizes that even if the underlying military action related to a service member's record may have been lawful, the secretary still has the discretion to remove the injustice. Without contrary language in section 1552 or in DoD's own regulations, the plain text of the statute made DAF's records corrections final and conclusive on DoD personnel, including DoD GC.

**B.    The specific language of 10 U.S.C. § 1552 detailing military department secretaries records-correction authority must override the general statute governing the DoD's "authority, direction and control" of DoD components as it relates to DoD GC's authority.**

The Supreme Court has instructed that "where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one," *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). "When Congress has focused on a particular subject, a court can reasonably rely on that expression of congressional intent, by contrast with a generally worded statute when it is unclear whether Congress focused on the particular matter at issue." *United States v. Stewart*, 104

F.3d 1377, 1387 (D.C. Cir. 1997)(citing *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 76 L. Ed. 704, 52 S. Ct. 322 (1932)). Here, Congress has precisely drawn the authority of the military department secretaries within the specific context of section 1552 military records corrections. The statute further specifically provides that such corrections are final and conclusive on all officers of the United States. The statute contemplates DoD's role in the records correction process, limiting that role to approving the regulations governing military correction boards.

Schwalier's argument that the specific provisions of section 1552 must override the general provisions of section 8013 is similarly supported by textualist interpretation principles. To the extent that the provisions of sections 1552 and 8013 cannot be reconciled, the specific provision must prevail. Scalia, *supra* at 183. In *Reading Law*, Justice Scalia quoted *Morton v. Mancari*, which concisely stated that "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton*, 417 at 550–51. Section 1552 contains provisions that apply specifically to military records corrections and limits DoD's role to approving procedural regulations established by SecAF. Section 8013 generally sets forth that SecAF operates under the authority, direction and control of SecDef. Under fundamental textualist principles and Supreme Court precedent, the specific provisions of section 1552 must prevail.

Conversely, 10 U.S.C. § 8013 generally sets forth that SecAF operates under the authority, direction and control of SecDef. But it does not set forth any specific standards on the contours of such authority, direction and control, let alone in the military records correction context. And it certainly does not expressly authorize the SecDef to overrule discretionary records-correction decisions to remove injustices made by military department secretaries. 10 U.S.C § 140(b) is similarly general, stating that DoD GC "shall perform such functions as the Secretary of Defense may prescribe" while providing no guidance on DoD GC's role in the military records correction context. Further, the implementing directive provides generally that DoD GC's "function" is to resolve legal disputes, but offers no specific guidance on how this function relates to military records correction decisions. *See* DoD Dir. 5145.01. Because there is no clear intention otherwise, the specific nature of 10 U.S.C. § 1552 should override the general provisions of 10 U.S.C. §§ 8013 and 140(b).

### C.    The legislative history of section 1552 suggests that DoD GC's actions were improper.

Originally, the statute contained no provision regarding the finality of a records correction action. *See Ashe v. McNamara*, 355 F.2d 277, 281 (1st Cir. 1965). It was amended with the final-and-conclusive provision, when "the Comptroller General refused to recognize a change in the type of a discharge thus accomplished as affecting forfeiture of monetary benefits which attended the

original discharge." *Id.* (internal citation omitted). A purpose of the amendment was to "preclude a continuance of vexatious appeals, not so much to the board, but to other agencies and other offices, to deal with these matters with some expeditiousness and finality . . . ." Keith A. Rosenberg, comment, *The Relationship Between Military Correction Boards and the Comptroller General: Finality of Correction Board Decisions Under 10 U.S.C. Section 1552*, 22 Am. U. L. Rev. 222, 233 (1972) (quoting *Hearings on H.R. 1181 Before Subcomm. No. 3 of the House Comm. on Armed Services*, 82d Cong., 1st Sess., Ser. 19 at 360 (1951)). Clearly, the legislative history indicates that Congress intended the final-and-conclusive provision vest exclusive authority to determine the merits of records correction requests with the military department secretaries, to the exclusion of other government agencies and offices. H.R. Rep. No. 449, 82d Cong., 1st Sess. at 3 (1951); A420. Without any statutory or regulatory provision giving DoD or DoD GC the authority to usurp procedurally valid secretarial records correction decisions, DoD must be bound by a final and conclusive decision of the military department secretary.

> **D.     The lower court's interpretation of DoD GC's authority is wholly inconsistent with the applicable implementing regulations.**

It is axiomatic that "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."

*Morton v. Ruiz*, 415 U.S. 199, 235 (1974). *See, e. g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding habeas corpus relief proper where Government regulations "with the force and effect of law" governing the procedure to be followed in processing and passing upon an alien's application for suspension of deportation were not followed); *Service v. Dulles*, 354 U.S. 363 (1957)(invalidating Secretary of State's dismissal of an employee where regulations requiring approval of the Deputy Undersecretary and consultation of full record were not satisfied); *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (invalidating dismissal of Interior Department employee where regulations governing hearing procedures for national security dismissals were not followed). *See also Yellin v. United States*, 374 U.S. 109 (1963) (reversing contempt conviction where congressional committee had not complied with its rules requiring it to consider a witness' request to be heard in executive session).

DAF regulations implementing 10 U.S.C. § 1552 do not contain any provisions authorizing DoD to interfere and order the invalidation of SecAF's actions subsequent to a procedurally valid AFBCMR action—final decision or recommendation. *See generally* 32 C.F.R. § 865.0–865.8; AFI 36-2603. Likewise, there is no provision requiring DAF personnel to seek the advice of or otherwise notify DoD of SecAF's decision and no requirement that DoD approve of any correction taken by the SecAF through the AFBCMR process. *Id.* All records-

correction authority rests with the SecAF who, acting through civilian boards, is tasked with determining whether there is an error or injustice in an applicant's record.

The DoD's own regulations are consistent with the division of authority detailed above. Department of Defense Directive 1332.41 explicitly provides that "the Secretaries of the Military Departments have the authority for *final decision* and the responsibility for the operation of their respective BCMRs . . . ." DoD Dir. 1332.41 (emphasis added). The instruction does not set forth any additional level of review by DoD when a decision has been made to correct an applicant's records nor does it specify any role DoD GC might have in the records-correction process. *Id.*

This Court should not accept the lower court's broad, nebulous interpretation of DoD GC's authority that would allow that office to selectively create a disagreement over a records correction decision and then "resolve" the disagreement by overruling a military department secretary's decision to grant relief on the basis of either legal error or injustice. The plain meaning of 10 U.S.C. § 1552, its specific text detailing the military records-correction process, and implementing regulations all indicate that DoD OGC was prohibited from intervening with DAF decisions to correct Schwalier's records.

# CONCLUSION

For the foregoing reasons, Schwalier respectfully requests that this Court reverse the district court's ruling on summary judgment and remand with instructions enter summary judgment in favor of the Appellant.

/s/ David P. Sheldon
David P. Sheldon
Law Offices of David P. Sheldon, PLLC
512 8th Street, SE
Washington, DC 20003
(202) 546-9575
Lead Counsel

Edward F. Rodriguez, Jr.
Law Offices
4133 Evergreen Drive
Fairfax, VA 22032

Brian D. Schenk
Law Offices of David P. Sheldon, PLLC
512 8th Street, SE
Washington, DC 20003

Michael T. Rose
Mike Rose Law Firm, PC
409 Central Ave
Summerville, SC 29483
Member of the South Carolina Bar

*Counsel for Appellant*

# **<u>ADDENDUM</u>**

# ADDENDUM

**PAGE:**

Opinion
       filed November 15, 2013 ........................................................................Add. 1

Order
Transferring Appeal to the United States Court of
Appeals for the Federal Circuit from the United States Court of
Appeals for the District of Columbia Circuit
       filed November 15, 2013 ......................................................................Add. 10

Order of
The Honorable Rosemary M. Collyer
Granting Defendants' Motion for Summary Judgment and
Denying Plaintiff's Cross-Motion for Summary Judgment
       filed March 14, 2012...........................................................................Add. 11

Memorandum Opinion
       filed March 14, 2012...........................................................................Add. 12

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2013        Decided November 15, 2013

No. 12-5153

TERRYL J. SCHWALIER, UNITED STATES AIR FORCE RETIRED
BRIGADIER GENERAL,
APPELLANT

v.

CHUCK HAGEL, SECRETARY OF DEFENSE, AND
ERIC FANNING, ACTING SECRETARY OF THE AIR FORCE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00126)

———

*David P. Sheldon* argued the cause for appellant. With
him on the briefs were *Brian D. Schenk* and *Edward F.
Rodriguez Jr.*

*John F. Cooney* and *Rebecca E. Pearson* were on the
brief for *amicus curiae* Air Force Association in support of
appellant.

2

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellees.  On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S. Attorney, and *Jenny Knopinski*, Special Assistant U.S. Attorney.  *John G. Lennon*, Special Assistant U.S. Attorney, entered an appearance.

Before: ROGERS and TATEL, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*:  Retired Brigadier General Terryl Schwalier brought this action in the district court seeking, *inter alia*, "correction" of his military records to reflect promotion to major general, along with active duty back pay and retired pay.  The district court entered summary judgment in favor of the Secretary of the Air Force and the Secretary of Defense.  Schwalier appeals.  Because the jurisdiction of the district court was based, at least in part, on the Little Tucker Act, we conclude that the Federal Circuit possesses exclusive jurisdiction over this appeal, and we therefore transfer Schwalier's appeal to that court.

## I.    BACKGROUND

The published opinion of the district court sets forth the procedural and factual background of this litigation in some detail.  *See Schwalier v. Panetta*, 839 F. Supp. 2d 75 (D.D.C. 2012).  We will therefore provide only the details pertinent to our jurisdictional analysis.

In 1995, then President Clinton nominated Brigadier General Terryl J. Schwalier for promotion to major general,

3

and the Senate confirmed his nomination in 1996. *Id.* at 77. President Clinton subsequently removed Schwalier's name from the promotion list, and in 1997 Schwalier retired in the grade of brigadier general.

Schwalier petitioned the Air Force Board for the Correction of Military Records ("Board") in 2003. He requested a correction of his records to reflect promotion to major general, effective January 1, 1997; retirement, as a major general; and receipt of appropriate back pay. In 2004, the Board recommended granting Schwalier's request, concluding that he had been promoted by operation of law before the President removed his name from the list in 1997. The Department of Defense ("DOD") rejected the Board's decision and determined that the action of the Board was *ultra vires* and without legal effect. Based on the DOD analysis, the Board notified Schwalier that he was not promoted "by authority of the President or otherwise, prior to the President taking personal action to remove [his] name from the promotion list."

Schwalier petitioned the Board for reconsideration in 2007. The Board again recommended correction, the Air Force adopted the recommendation, and the DOD intervened, directing the DOD Comptroller not to pay Schwalier as directed by the Air Force. In response, the Air Force again rescinded the "corrections" of Schwalier's records.

On January 20, 2011, Schwalier filed suit against the Secretary of the Air Force and the Secretary of Defense. Schwalier alleged that the DOD had unlawfully interfered with the records corrections favorable to Schwalier, and that the Air Force had acted arbitrarily and capriciously in acquiescing to that interference. According to Schwalier, neither the Secretary of Defense nor the Secretary of the Air

**Add. 3**

4

Force could legally reverse relief once granted, because records corrections issued by the Air Force are "final and conclusive on all officers of the United States."  10 U.S.C. § 1552(a)(4).

In his complaint, Schwalier sought equitable and declaratory relief reinstating the Board's favorable decisions, as well as an order enjoining the DOD from interfering with further correction actions.  Schwalier "expressly waive[d] any right or entitlement to recover monetary damages greater than $10,000 in this action," as a consequence of filing his "complaint in this Honorable Court."  And in the final paragraph of his prayer for relief, Schwalier requested "any other relief, *including active duty pay and retired pay*, as this Honorable Court deems just and proper to provide complete and full relief to Plaintiff."  (Emphasis added.)  On cross-motions for summary judgment, the district court ruled in favor of the Secretaries.  *Schwalier*, 839 F. Supp. 2d at 86.  Because the jurisdiction of the court below was based in part on the Little Tucker Act, we transfer this appeal to the Federal Circuit.

## II.   ANALYSIS

The Tucker Act, 28 U.S.C. § 1491, vests exclusive jurisdiction in the Court of Federal Claims over claims against the United States for "liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1); *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006).  The Little Tucker Act, 28 U.S.C. § 1346, provides an exception, vesting district courts with concurrent jurisdiction for "civil action[s] or claim[s] against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress . . . ."  28 U.S.C. § 1346(a)(2).  In 28 U.S.C. § 1295(a)(2), the statute grants "exclusive jurisdiction" to the

5

Court of Appeals for the Federal Circuit over appeals from decisions of the district courts when "the jurisdiction of that court was based, in whole or in part," on the Little Tucker Act. By granting exclusive jurisdiction over such cases to the Federal Circuit, the Act divests us of appellate jurisdiction over claims that "(1) seek money (2) not exceeding $10,000 (3) from the United States and (4) [are] founded" upon an "Act of Congress . . . that can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Van Drasek v. Lehman*, 762 F.2d 1065, 1068 (D.C. Cir. 1985) (internal quotations omitted).

On the face of the complaint, it would appear that these four criteria are met: Schwalier seeks back pay and retirement pay; he expressly waives an amount exceeding $10,000; the action is brought against the Secretaries in their official capacity as Officers of the United States; and the claim/action finally rests upon the statutory structure for payment of military personnel and correction of relevant records. Before this court, Schwalier does not contest the last three of the criteria, but asserts that his complaint does not "seek money . . . for damages" within the meaning of the Act. It is on this element that the parties have joined issue, and it is solely this issue which we must determine in order to answer the jurisdictional question.

Schwalier asserts that the Little Tucker Act cannot apply because his "complaint does not contain any request for money damages." He forwards two related arguments for why his claim is not monetary in nature. First Schwalier focuses on the structure of his complaint, and argues that neither his request for back pay nor his waiver of damages over $10,000 sufficiently raises a monetary claim requiring a transfer. Schwalier's only monetary reference appears in the final paragraph of his prayer for relief, in which he requests

6

"any other relief, including active duty back pay and retired
pay, as this Honorable Court deems just and proper to provide
complete and full relief to Plaintiff."  Compl. Prayer for
Relief ¶ (M).  This Court is duty-bound to "grant the relief to
which each party is entitled, even if the party has not
demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).
Schwalier characterizes the last paragraph of his complaint as
an invocation of this duty, and notes that we have held such
invocations to be surplusage, and thus of no consequence to
our jurisdictional analysis.  *Sharp v. Weinberger*, 798 F.2d
1521, 1524 (D.C. Cir. 1986); *see also Viet. Veterans of Am. v.
Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988).
Schwalier reasons that his reference to back pay is likewise
surplusage, and therefore, it too has no bearing on this court's
jurisdiction.

It does not appear to us that our decision in *Sharp* solves
Schwalier's problem.  The plaintiff in *Sharp* did not seek
money damages in any direct form.  The language of the
complaint discussed in the *Sharp* decision sought "all other
relief deemed just and proper."  It was that language that we
deemed surplusage.  Schwalier, on the other hand, explicitly
seeks relief that "include[s] active duty back pay and retired
pay."  It cannot be gainsaid that had the plaintiff himself
calculated the back pay and retired pay and sought the explicit
amount, that would create a monetary claim, and, all other
requirements being met, place this appeal in the jurisdiction of
the Federal Circuit under the Little Tucker Act.  We do not
know whether the use of words rather than numbers
represents intentionally artful pleading or simply a stylistic
choice, but we cannot allow it to control.  To permit plaintiffs
to evade the strictures of the Tucker Act by setting forth the
formula for their monetary relief rather than asking for a
specified amount of "damages" in so many words would undo
the carefully erected structure that Congress set forth.  We

**Add. 6**

7

further note that by explicitly waiving damages over $10,000, Schwalier has apparently deliberately brought himself within the terms of the Little Tucker Act but for the disputed question of a monetary claim which, as we describe above, he has made without calculating its total.

Schwalier's second argument goes more broadly to the nature or "core" of his action. He sought equitable and declaratory relief. Any monetary recovery would come from a favorable decision by the Board, not the court. Schwalier likens his case to *Smalls*, in which the plaintiff sought "in essence . . . declaratory or injunctive relief that is not negligible in comparison with the potential monetary recovery." *Smalls*, 471 F.3d at 190 (internal quotations omitted). As in *Smalls*, Schwalier challenges the denial of relief from a records-correction board. *See id.* And as in *Smalls*, Schwalier filed his suit "primarily to *correct his military records*." *See id.* (emphasis in the original). As counsel described it at oral argument, Schwalier's is not a "back pay" action or a "money case," but an APA action, and this is how the district court treated it.

The Secretaries argue in response that neither the intent of the litigant nor the treatment of the district court governs our analysis. The question of jurisdiction is answered by the language of the complaint, and in his complaint Schwalier explicitly requested monetary relief. It is immaterial that Schwalier's complaint included an APA claim; his action need only be based "in part" on the Little Tucker Act to divest us of appellate jurisdiction, even if it was also based in part on the APA. The Secretaries have the better argument.

We only look to the essence of a complaint in the *absence* of an explicit request for monetary relief. *See, e.g.*, *Kidwell v. Dep't of the Army*, 56 F.3d 279, 285 (D.C. Cir.

8

1995) ("[P]laintiff here has not explicitly requested monetary relief . . . ."); *Tootle v. Sec'y of the Navy*, 446 F.3d at 167, 169 (D.C. Cir. 2006) ("Tootle's complaint does not explicitly request money damages."). Because Schwalier has included such a request on the face of the complaint, there is no need to peer deeper into its substance, essence, or "core." *See Kidwell*, 56 F.3d at 284. Even in *Smalls*, our decision hinged on ambiguity in the language of the complaint. There we found a reference to "retirement benefits" insufficient to create a monetary claim because "the phrase 'retirement benefits' connotes a host of benefits to which no monetary value can be attached," and any disability pay the plaintiff could have received "would come as a result of administrative proceedings . . . and not as a result of the adjudication of the claims in" the plaintiff's complaint. *Smalls*, 471 F.3d at 190–91. Schwalier's request for back pay, on the other hand, is unambiguously monetary in nature, and he requested it directly from the court. In light of this explicit request, we need not examine the complaint in greater detail.

In sum, Schwalier sought back pay, and the explicit nature of his request obviates the need to examine his claim's essence. Moreover, the location of the monetary request in his complaint is immaterial to our jurisdictional analysis. Ultimately, Schwalier requested (1) back pay (2) not exceeding $10,000 that, if granted, would (3) come from the Federal Government, and (4) his substantive claim was founded upon 10 U.S.C. § 1552, an Act of Congress we have held can "fairly be interpreted as mandating compensation by the Federal Government." *Van Drasek*, 762 F.2d at 1068, 1071 (back pay request). Accordingly, Schwalier's action below was based "in part" on the Little Tucker Act, and we lack jurisdiction over this appeal. *See id.* at 1072.

**Add. 8**

9

## III.  CONCLUSION

For the foregoing reasons, we transfer this appeal to the Federal Circuit.

*So ordered.*

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 12-5153                            **September Term, 2013**

**1:11-cv-00126-RMC**

**Filed On:** November 15, 2013

Terryl J. Schwalier, United States Air Force
Retired Brigadier General,

         Appellant

     v.

Chuck Hagel, Secretary of Defense and Eric
K. Fanning, Acting Secretary of the Air Force,

         Appellees

         **BEFORE:**     Rogers and Tatel, Circuit Judges, and Sentelle, Senior Circuit
                          Judge

## O R D E R

This cause came to be heard on the record on appeal from the United States
District Court for the District of Columbia and was briefed and argued by counsel.  On
consideration thereof, it is

**ORDERED** that this appeal be transferred to the United States Court of Appeals
for the Federal Circuit, in accordance with the opinion issued this date.

The Clerk is directed to transmit the original file and a certified copy of this order
to the United States Court of Appeals for the Federal Circuit.

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
           Jennifer M. Clark
           Deputy Clerk

Date: November 15, 2013
Opinion for the court filed by Senior Circuit Judge Sentelle.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRYL J. SCHWALIER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 11-cv-126 (RMC)** |
| ) | |
| **LEON E. PANETTA,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is herby

**ORDERED** that Defendants' motion for summary judgment [Dkt. # 9] is

**GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's cross-motion for summary judgment

[Dkt. # 13] is **DENIED**.

This is a final appealable order. *See* Fed. R. App. P. 4(a). This case is closed.


Date: March 14, 2012                          _____/s/_____
                                              ROSEMARY M. COLLYER
                                              United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TERRYL J. SCHWALIER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 11-cv-126 (RMC)** |
| **LEON E. PANETTA,** *et al.* | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Brigadier General Terryl J. Schwalier served in the United States Air Force for nearly 30 years. In December 1995, former President William Jefferson Clinton nominated Brigadier General Schwalier for a promotion to major general and the Senate confirmed his nomination. Before Brigadier General Schwalier was promoted, however, President Clinton removed his name from the promotion list. Years later, Brigadier General Schwalier sought his promotion from the Air Force Board for the Correction of Military Records (the "Board"), arguing that the removal of his name from the promotion list was politically motivated and was ineffective because the promotion had occurred by operation of law one month *before* President Clinton removed his name. The Board agreed and recommended that Brigadier General Schwalier's military records be corrected to show him retiring as a Major General (two star) rather than a Brigadier General (one star). Shortly thereafter, the Department of Defense ("DoD") became involved and stated that the Board's decision was legally incorrect and *ultra vires* and that the Air Force could not, therefore, retroactively promote Brigadier General

Schwalier to major general. Brigadier General Schwalier petitions this Court to find that the

DoD's actions were arbitrary and capricious and that the Air Force's decision to correct his

military records is final and binding on all officers of the United States.

## I. FACTS

Brigadier General Schwalier reported to King Abdulaziz Airbase in Saudi Arabia

in July 1995 to assume command of the 4404th Wing (provisional). The Wing provided aircraft

to enforce the "no-fly zone" then in effect over southern Iraq. Many of the Wing's personnel

lived in Khobar Towers, a large high-rise apartment complex close to the airbase. On June 25,

1996, Hezbollah detonated a truck bomb at the Khobar Towers near the living quarters of the

Wing's Air Force personnel. The blast from the bomb killed 19 airmen and injured hundreds of

others.

More than six months prior to the bombing, on December 2, 1995, President

Clinton nominated Brigadier General Schwalier for a promotion to major general. The Senate

confirmed this nomination on March 14, 1996, and Brigadier General Schwalier was scheduled

to receive his promotion on either January 1, 1997 or February 1, 1997.[1] On December 20, 1996,

General Thomas Moore, Vice Chief of Staff of the Air Force, called Brigadier General Schwalier

at his home to indicate that his promotion would be delayed. General Moore followed this phone

call with a letter to Brigadier General Schwalier on January 28, 1997. The letter stated that

General Moore was recommending that Brigadier General Schwalier's promotion be delayed for

up to six months to complete "the investigation of the circumstances surrounding the bombing of

---

[1] The administrative record is unclear, and the parties dispute whether Brigadier General Schwalier was first set to be promoted on January 1, 1997 or February 1, 1997. The correct date is not necessary for this Opinion.

the Khobar Towers . . . while . . . [Brigadier General Schwalier] . . . [was] Commander, 4404th

Wing (Provisional)." Administrative Record ("AR") 117. The Secretary of the Air Force, Sheila

Widnall, approved General Moore's recommendation to delay the promotion on February 22,

1997.

      A total of four investigations were conducted into the Khobar Towers bombing:

one by the House National Security Committee; one by a retired Army general officer appointed

by the Secretary of Defense; and two by generals appointed by the Secretary of the Air Force and

Vice Chair Secretary of the Air Force. While the two investigations ordered by the Secretary of

the Air Force concluded that Brigadier General Schwalier acted reasonably and prudently given

what he knew at the time before the bombing, the DoD investigation was unfavorable to him.

After the DoD investigation concluded, Secretary of Defense William Cohen determined that

Brigadier General Schwalier did not "adequately assess the implication of the possible attack [on

Khobar Towers]" and recommended that President Clinton  remove Brigadier General

Schwalier's name from the major general promotion list. AR 7. On the same day that President

Clinton received Secretary Cohen's recommendation, July 31, 1997, the President removed

Brigadier General Schwalier's name from the major general promotion list.

      When Brigadier General Schwalier learned that the Secretary of Defense planned

to recommend that his name be removed from the promotion list, he immediately applied for

voluntary retirement. His retirement was effective on September 1, 1997. Nearly six years later,

on April 7, 2003, Brigadier General Schwalier filed an application to correct his military records

with the Air Force Board for the Correction of Military Records. He argued that his projected

promotion date was January 1, 1997 and that, pursuant to 10 U.S.C. § 624(d)(4), the promotion

-3-

**Add. 14**

delay lasted at most six months.  Because the promotion delay thereby ended on June 30, 1997,

Brigadier General Schwalier argued that he was promoted, by operation of law, no later than July

1, 1997.  As a result, according to Brigadier General Schwalier, President Clinton did not remove

his name from the promotion list prior to his promotion and that the "removal" was therefore

ineffective.  The Board agreed and recommended that Brigadier General Schwalier's military

records be corrected to reflect that: 1) he was promoted "by operation of law" to the grade of

major general effective January 1, 1997, and 2) he applied for and was approved for retirement as

a major general on February 1, 2000.

   Because the Board's recommendation would "affect an appointment or promotion

requiring confirmation by the Senate," the Board forwarded its recommendation to Joe

Lineberger, Director, Air Force Review Boards Agency.  32 C.F.R. § 865.4(l)(2).  Director

Lineberger adopted the Board's recommendation and, on October 6, 2004, directed the Chief of

Staff of the Air Force to correct Brigadier General Schwalier's military records.  DoD, however,

disagreed with the Board's legal analysis and conclusions.  In a memorandum dated February 7,

2005,[2] the DoD's Deputy General Counsel advised the Deputy General Counsel of the Air Force

that the two Court of Claims cases upon which the Board had relied to find that Brigadier

General Schwalier was promoted by operation of law had recently been overturned by the

Federal Circuit in *Dysart v. United States*, 369 F. 3d 1303 (Fed. Cir. 2004).  AR 267.  DoD's

Deputy General Counsel asked the Air Force to review *Dysart* and respond in writing.

   The Air Force Office of General Counsel responded to the DoD on February 18,

---

[2] The date recorded on the memorandum is February 7, **2006**.  AR 267.  Both parties
agree that the correct date is February 7, **2005**.

2005.  The Air Force distinguished *Dysart* factually from Brigadier General Schwalier's case and opined that Brigadier General Schwalier was promoted to major general before the President removed him from the list and that the Board's decision was therefore correct.  AR 282.  The General Counsel for the DoD, however, remained unconvinced.  In a memorandum dated March 24, 2005, DoD General Counsel William Haynes wrote to the Acting Secretary of the Air Force and stated that no "public act" had occurred to effectuate Brigadier General Schwalier's promotion before President Clinton removed him from the promotion list.  He opined that, in the absence of a public act, Brigadier General Schwalier's promotion was not effective and the Board's recommendation to promote him retroactively was "ultra vires and without legal effect."  AR 271.  In response, Mr. Lineberger, the Director of the Board, advised Brigadier General Schwalier's attorney that "given the DoD General Counsel's role as the final legal authority for the DoD, his determination is binding upon the Air Force.  In view of this and since you are not seeking a correction of records that is within the purview of the [Board], we are not in a position to take further action on your client's request.  This is the final Air force decision on your client's application."  AR 300.

On September 24, 2007, Brigadier General Schwalier submitted a request for reconsideration to the Board.  On November 19, 2007, the Board unanimously recommended that Brigadier General Schwalier's request be granted.  Although the Board expressed concern over DoD's General Counsel effectively overruling its prior decision, it chose not to address whether the DoD or the Secretary of the Air Force had the ultimate authority to correct military records.  Instead, the Board focused on whether a correction was warranted to "remove an injustice." 10

-5-

**Add. 16**

U.S.C. § 1522 (a)(1).[3]  The Board held that, "after reviewing [Brigadier General Schwalier's] complete original submission to the Board, his current submission, and additional classified material referenced by the applicant . . . we conclude that the decision to remove the applicant's name from the CY 95 Major General promotion list caused an injustice. " AR 136.

In finding that an injustice occurred, the Board was troubled by the disparity between the treatment accorded Brigadier General Schwalier and that accorded to other military leaders who were in command during terrorist attacks in the 1970s, on the United States Marine Corps' barracks in Lebanon, on the USS Cole, and on the Pentagon on 9/11.  The Board found it unjust to prevent Brigadier General Schwalier's promotion while no action was taken against other commanders.  Moreover, the Board noted that it had additional information that DoD did not know when the latter issued its unfavorable investigative report.  The additional evidence suggested that the United States had intelligence regarding a possible attack on the Khobar Towers but failed to relay that intelligence to Brigadier General Schwalier in an actionable form before the attack occurred.  The Board "simply [did] not find in any of the voluminous amount of information reviewed . . . evidence of a failure of performance by [Brigadier General Schwalier] warranting the action taken against him."  AR 137.  Accordingly, the Board again recommended that Brigadier General Schwalier's military records be corrected.

As with the prior recommendation, Mr. Lineberger, Director of the Board, adopted the Board's 2007 recommendation.  He then issued a directive to the Chief of Staff, United States Air Force to implement the recommendation.  He also published a Special Order

---

[3]  The Board's prior decision focused on whether it should act to "correct an error," 10 U.S.C. § 1522(a)(1), namely whether Brigadier General Schwalier was, in fact, promoted before President Clinton removed his name from the promotion list.

appointing Brigadier General Schwalier to the grade of major general, effective January 1, 1997.

Shortly thereafter, on January 18, 2008, DoD emailed the Defense Finance and Accounting

Service instructing the latter to withhold payments to Brigadier General Schwalier based upon

the Air Force's correction to his military records. The Acting General Counsel of DoD also

contacted Michael Wynne, Secretary of the Air Force. Based upon that correspondence,

Secretary Wynne instructed Mr. Lineberger to rescind the correction to Brigadier General

Schwalier's records. According to Secretary Wynne, the Acting General Counsel of the DoD,

the Department of Justice, and the Secretary of Defense all agreed that the Board's decision was

incorrect and that "all actions taken in implementation of [the Board's recommendation] are

void." AR 3. At Secretary Wynne's direction, Mr. Lineberger, on April 3, 2008, rescinded his

December 20, 2007 directive.

Brigadier General Schwalier asks that this Court to hold that the Board's decision

to correct his military records is final and conclusive and that DoD and the Secretary of the Air

Force acted arbitrarily and capriciously when they overturned Mr. Lineberger's order adopting

the Board's recommendation and promoting him to major general.

## II. LEGAL STANDARD

The Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.,* entitles "a

person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action . . . to judicial review thereof." 5 U.S.C. § 702. For a court to have jurisdiction

under the APA, the challenged agency action must be final. *Cobell v. Norton*, 240 F.3d 1081,

1095 (D.C. Cir. 2001). A final agency action "(1) marks the consummation of the agency's

decisionmaking process – it must not be of a merely tentative or interlocutory nature; and (2) the

-7-

action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Secs., Inc. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted).  A court therefore must consider "whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties." *Index. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

The APA requires a reviewing court to set aside a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).  In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.").  An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 U.S. 1005, 1021 (D.C. Cir. 1999) ("Where the

agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). If the district court can "reasonably discern" the agency's path, it should uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197.

Under the APA, the district court acts as an appellate court and reviews the matter as a question of law. *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). Defendants' have moved to dismiss or, in the alternative, for summary judgment. How the motion is labeled is immaterial because, in an APA action, "the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record, regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

### III. ANALYSIS

#### A.  Statute of Limitations

28 U.S.C. § 2401(a) provides that, "except as provided by chapter 71 of title 41 [the Contract Disputes Act], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues ."  The

-9-

parties disagree as to when the "right of action first accrue[d]" in this case. Defendants claim that the right of action accrued on September 1, 1997 after Brigadier General Schwalier retired from the Air Force because his name was removed from the promotion list. On this basis, Defendants claim that the Complaint is time barred because the cause of action accrued in 1997 and the Complaint was not filed until 2011. Defendants rely on *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc), in which the Federal Circuit held that a discharged army officer must file a complaint within six years of the date of his discharge and that filing a claim with a military board does not affect this six-year limitation. Defendants ask the Court to adopt the *Martinez* decision and hold that Brigadier General Schwalier's application with the Board does not and cannot reset the six year clock.

Brigadier General Schwalier argues that the statute of limitation for a court action does not begin to run until *after* the Board acted on his application. He argues that he is not contesting his retirement or any adverse personnel action; he is seeking review of DoD's and the Secretary of the Air Force's decisions with respect to his application to correct his military records. He also points out that *Martinez* is the minority opinion and that the Second, Third, Fifth, and Tenth Circuits have all held that the statute of limitations for seeking APA review of a Board action runs from the date of the final Board decision and not the underlying personnel action.[4] Finally, Brigadier General Schwalier relies on *Lebrun v. England*, where a court in this district adopted the majority viewpoint and held that "the right to obtain judicial review of a

---

[4] *Blassingame v. Sec'y of Navy*, 811 F.2d 65, 71 (2d Cir. 1987), *rev'd on other grounds after remand*, 866 F.2d 556 (1989); *Dougherty v. United State Navy Bd. for Corr. of Naval Records*, 784 F.2d 499, 501-02 (3d Cir. 1986); *Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986); *Geyen v. Marsh*, 775 F.2d 1303, 1306 (5th Cir. 1985).

Board of Corrections' decision under the APA . . . accrues at the time of the final agency decision . . . rather than at the time when the underlying discharge or alleged coerced resignation occurred."  212 F. Supp. 2d 5, 11 (D.D.C. 2002).

This Court is persuaded by the majority view and finds that Brigadier General Schwalier's complaint is not barred by the statute of limitations.  In this case, he seeks review of agency actions that occurred in 2004 and 2007.  His first claim for relief argues that DoD unlawfully interfered with the Air Force's 2004 decision to correct his military records and that the Air Force acted "arbitrarily, capriciously, and [unlawfully]" when it "acquiesced in DoD's unlawful interference."  Compl. ¶¶ 93-94.  His second claim for relief is identical except that he complains of DoD's "interference" in 2007 and the Air Force's subsequent acquiescence.  *See* Compl. ¶ 99-101.  Thus, Schwalier is not directly challenging the failure to promote him or the removal of his name from the promotion list.  Although the agency actions necessarily involved the removal of his name from the promotion list, that does not alter when Brigadier General Schwalier's ability to challenge those actions first accrued.  28 U.S.C. § 2401(a); *see, e.g.,* *Lebrun*, 212 F. Supp. 2d at 11-12.

### B.  Administrative Procedures Act

#### i.  *Military Correction Boards*

Prior to 1946, aggrieved military members were forced to seek private bills in Congress to correct their military records.  As part of the Legislative Reorganization Act of 1946, Congress allowed Secretaries of military departments to establish boards to correct military records.  *See* Pub. L. No. 79-601, § 207; *Ogen v. Zuckert*, 298 F.2d 312, 315-16 (D.C. Cir. 1961) ("The statute under which the Board was established obviously was intended to take the place of

-11-

private bills for relief from error or injustice at the hands of the Armed Services."). 10 U.S.C. §1552 governs the correction of military records and provides that "[t]he Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). "[S]uch corrections shall be made by the Secretary [of a military department] acting through boards of civilians . . . ." *Id.* Procedures to correct military records are established by the Secretary of the relevant military department and are "approved by the Secretary of Defense." *Id.* at § 1552(a)(3).

The procedures governing the correction of military records for the Air Force are found at 32 C.F.R. §§ 865 - 865.8. The regulations identify who may apply for a correction of military records and how and where to apply. *Id.* § 865.3. Once the Air Force recieves an application to correct military records, "[a] panel of at least three board members considers each application." *Id.* § 865.4(c). Although the Board "is not an investigative body" it may "in its discretion hold a hearing or call for additional evidence or opinions in any case." *Id.* § 865.2(c). A majority of the panel "constitutes the action of the Board." § 865.4(h). If the Board denies an application or unanimously grants an application that does not affect a promotion requiring Senate confirmation,[5] the Board "acts for the Secretary of the Air Force and its decision is final." *Id.* § 865.4(l)(1) & (2). Otherwise, the Board's recommendation is forwarded to the "Secretary of the Air Force or his or her designee for final decision." *Id.* § 865.4(l)(3).

---

[5] Specifically, the Board acts on behalf of the Secretary of the Air Force when it "[g]rants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not affect an appointment or promotion requiring confirmation by the Senate, and does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision." 32 C.F.R. § 865.4(l)(2).

-12-

Once the Secretary (or his designee) receives the Board's recommendation, "[t]he Secretary may direct such action as he or she deems appropriate on each case . . . . If the Secretary does not accept the Board's recommendation, the Secretary's decision will be in writing and will include a brief statement of the grounds for his/her final decision." *Id.* § 865.5(a). Once the Secretary (or his designee) makes a "final decision," either adopting or rejecting the Board's recommendation, "[t]he Executive Director or his/her designee will inform the applicant or counsel, if any, of the final decision on the application." 32 C.F.R. § 865.7. After "final decision" has been made by the Secretary (or his designee) that decision "is final and conclusive on all officers of the United States." 10 U.S.C. § 1552(a)(4).

### ii. Final Agency Action

As an initial matter, the Court must identify the final agency actions subject to review. In his Complaint, Brigadier General Schwalier loosely identifies two actions taken by the DoD and two actions taken by the Department of the Air Force that he argues are subject to review: (1) DoD's "interfer[ence] with and ordering the invalidation of" the Secretary's 2004 and 2007 decisions to correct his records, Compl. ¶¶ 94, 99; and (2) the Air Force's actions (in 2004 and 2008) to "rescind and reverse a final and conclusive correction of Brig Gen Schwalier's promotion," *Id.* ¶¶ 95, 100. The Court will address the DoD and Air Force actions that occurred in early 2008. Brigadier General Schwalier himself points out that he only submitted one application to the Board and that the second submission "was actually a request for reconsideration." Pl.'s Reply at 20 n.3. He also emphasizes that the second submission was acknowledged by the Board as a request for reconsideration, had the same docket number as the initial application, and that the Board's 2007 recommendation was set forth in an addendum to

-13-

Add. 24

the record of its prior proceeding.  Accordingly, the 2004 actions were not final agency actions

and are therefore not subject to APA review.  The final agency actions are those the DoD and the

Air Force took with respect to the April 3, 2008 decision to rescind the order correcting Brigadier

General Schwalier's military records.  *See also* Pl.'s Reply at 14 ("the immediate action seeks

judicial review of a final, April 3, 2008, decision . . . .")

### a. Department of Defense

Brigadier General Schwalier relies on statute, regulations, and a DoD directive to

argue that DoD acted arbitrarily and capriciously and in violation of the law when it interfered

with the Secretary of the Air Force's decision to correct his military records.  The statute

governing the correction of military records states that "[t]he Secretary of a military department

may correct any military record of the Secretary's department . . . ."  10 U.S.C. § 1552.  Brigadier

General Schwalier argues that the Secretary of the Air Force — not the Secretary of Defense —

has the discretion to correct Air Force military records.  The distinction between the authority of

the Secretary of the Air Force and the Secretary of Defense is highlighted in § 1522 when

Congress stated that procedures to correct military records shall be "established by the Secretary

concerned . . . [and] those procedures must be approved by the Secretary of Defense."  10 U.S.C.

§ 1552(3).  Brigadier General Schwalier argues that according to the plain language of the

statute, DoD can review *procedures* involving the correction of military records, but not a

substantive *decision* to correct a military record.  Thus, DoD's attempt to exercise control over

the Air Force's decision to correct Brigadier General Schwalier's military records is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).

While there is certainly appeal to the "plain language" argument, Brigadier General Schwalier ignores the plain language of other statutes that limits the authority of the Secretary of the Air Force. Specifically, in enumerating the responsibilities of the Secretary, Congress has expressly stated that the Secretary of the Air Force acts "[s]ubject to the authority, direction, and control of the Secretary of Defense . . . ." 10 U.S.C. § 8013; *see also id.* § 8011 ("The Department of the Air Force is separately organized under the Secretary of the Air Force. It operates under the authority, direction, and control of the Secretary of Defense."). Moreover, Congress has specifically designated DoD General Counsel as "the chief legal officer of the Department of Defense" who "shall perform such functions as the Secretary of Defense may prescribe." 10 U.S.C. § 140(b). As relevant here, the Secretary of Defense has prescribed that the General Counsel "[p]rovide advice to the . . . Secretary of Defense regarding all legal matters . . . within . . . the Department of Defense" and "determine the DoD position on specific legal problems, and resolve disagreements within the DoD on such matters." Department of Defense Directive 5145.01 §§ 3.1 & 3.10 (May 2, 2001).

Accordingly, while the Secretary of the Air Force "may correct any military record," 10 U.S.C. § 1552(a), he does so "subject to the authority, direction and control of the Secretary of Defense." 10 U.S.C. § 8013. And, when there is a "disagreement[] within the Department of Defense[6] on a legal matter," the Department of General Counsel is not only *permitted* to resolve that disagreement, he is *obligated* to. DoD General Counsel did not violate 10 U.S.C. § 1522 by criticizing the legal conclusions of the Board and eventually exercising

---

[6] The Department of the Air Force is a sub-component of the Department of Defense. 10 U.S.C. § 111(a)(8). Thus, a disagreement over a legal matter between Air Force attorneys and DoD attorneys is a "disagreement within the Department of Defense."

"direction and control" over the Secretary of the Air Force's decision to correct Brigadier

General Schwalier's military records.

Brigadier General Schwalier's reliance on the regulations governing the

procedures for correcting military records and a DoD directive fails for the same reasons.

Brigadier General Schwalier is correct that the regulations, like the statute, give the Secretary of a

military department the ability to correct military records and that there is no provision allowing

review of the Secretary's decision by DoD.  *See* 32 C.F.R. §§ 865-865.8.  Likewise, Department

of Defense Directive 1332.41provides that "<u>The Secretaries of the Military Departments</u> have the

authority for final decision and the responsibility for the operation of their respective [Boards for

the Correction of Military Records] . . . ." Department of Defense Directive 1332.41 § 4.2

(March 8, 2004) (emphasis in original).  However, because the Secretary of the Air Force acts

under the authority of and subject to the "direction [and] control" of the Secretary of Defense and

because the DoD General Counsel is the "chief legal officer" charged with resolving legal

disputes within the Department, the DoD did not violate the law or abuse its discretion when it

got involved in Brigadier General Schwalier's application process and resolved a legal

disagreement between the Air Force and the DoD.

Stating that DoD *can* get involved in the process to correct military records, does

not, however, answer the question of whether, in getting involved, the DoD acted arbitrarily or

capriciously.  In this case, that question is easy to answer.  DoD repeatedly expressed concern

that the Board was acting beyond its authority; that it was overruling a non-delegable presidential

act (the removal of Brigadier General's name from the promotion list by President Clinton); that

the cases on which the Board relied were overturned by *Dysart*; that the "reconsideration" of

-16-

Brigadier General Schwalier's application involved the same legal issues and therefore should

have had the same result as his first application; and that the record was devoid of any public act

that would effectuate Brigadier General Schwalier's promotion under *Marbury v. Madison*, 5

U.S. 137 (1803). Even Brigadier General Schwalier appears to concede that DoD and the Air

Force had "two reasonable, but conflicting interpretations of case law." Reply at 11. Given that

DoD had a "reasonable" basis for believing that the Board's legal analysis was wrong and that

the Board's actions were *ultra vires*, and given that "the scope of review under the 'arbitrary and

capricious' standard is narrow and a court is not to substitute its judgment for that of the agency,"

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, the Court finds that DoD did not act arbitrarily or

capriciously in directing the Secretary of the Air Force to rescind its decision to correct Brigadier

General Schwalier's military records.

### b. Department of the Air Force

For similar reasons, the Secretary of the Air Force did not act arbitrarily or

capriciously in "acquiesc[ing]" to DoD. Compl. ¶¶ 99, 100. As already stated, the Secretary of

the Air Force acts under the "direction and control" of the Secretary of Defense, and the latter has

specifically charged the DoD General Counsel with resolving legal disputes within the

Department. Thus, when the DoD General Counsel told the Secretary of the Air Force that

Brigadier General Schwalier's application should be denied and that the Secretary of Defense

agreed, the Secretary of the Air Force acted reasonably.

Brigadier General Schwalier, however, contends that the Secretary of the Air

Force was not permitted to acquiesce. He claims that once a favorable decision was made by the

Secretary of the Air Force, that decision was "final and conclusive on all officers of the United

-17-

States," including the Secretary of the Air Force himself. 10 U.S.C. § 1552(a)(4). Thus, according to Brigadier General Schwalier, the Secretary of the Air Force could not rescind its earlier decision correcting his military records. This interpretation of the statute is problematic for at least two reasons. First, the decision to correct a military record becomes "binding upon all officers of the United States," *id.*, only when it is the "*final* decision" of the Secretary. 26 C.F.R. § 865.4(l)(3) (emphasis added). The *final* decision the Secretary of the Air Force made in this case was to rescind the correction. Therefore it is this recision that is "binding upon all officers," not the original decision to correct Brigadier General Schwalier's records. Second, although Brigadier General Schwalier contends that "no regulatory provision allows [the Secretary of the Air Force] or a lawful designee to issue a final decision and later rescind and reverse it for any reason," Pl.'s Mot. Summ. J. at 24, the reverse is also true — there is no provision *prohibiting* the Secretary from doing so. The Court refuses to hold that a Secretary of a military department can never — no matter the reason or circumstance — rescind a military records correction decision made him or by his designee. The regulations provide that, with respect to applications to correct military records, "[t]he Secretary may direct such action as he or she deems appropriate on each case . . . ." " *Id.* § 865.5(a) The Secretary's ability to act "as he or she deems appropriate on each case" includes the ability to rescind a designee's prior action.

## IV. CONCLUSION

Although the Air Force considers the treatment of Brigadier General Schwalier to have been unjust and believes that his records should be corrected to grant his promotion to major general, DoD has determined that the Air Force lacked legal authority to promote Brigadier General Schwalier after his name was removed from the promotion list by the

President of the United States.  DoD did not act arbitrarily or capriciously in making this

decision, and the Air Force did not act arbitrarily or capriciously in accepting it.  Accordingly,

Defendants' motion for summary judgment will be granted, and Brigadier General Schwalier's

cross motion for summary judgment will be denied.  A memorializing Order accompanies this

Memorandom Opinion.

Date: March 14, 2012                                          _____/s/_____

                                                             ROSEMARY M. COLLYER
                                                             United States District Judge

# STATUTES AND REGULATIONS
## ADDENDUM

5 U.S.C. § 704 ................................................................................ADD 1

5 U.S.C. § 706 ................................................................................ADD 2

10 U.S.C. § 140 ..............................................................................ADD 3

10 U.S.C. § 611 ..............................................................................ADD 4

10 U.S.C. § 624 ..............................................................................ADD 5

10 U.S.C. § 626 ..............................................................................ADD 8

10 U.S.C. § 629 ..............................................................................ADD 9

10 U.S.C. § 1552 ..........................................................................ADD 11

10 U.S.C. § 8013 ..........................................................................ADD 13

28 U.S.C. § 1295 ..........................................................................ADD 15

28 U.S.C. § 1346 ..........................................................................ADD 17

32 C.F.R. § 865 ............................................................................ADD 19

Air Force Instruction 36-2501 ....................................................ADD 25

Air Force Instruction 36-2603 ....................................................ADD 27

Department of Defense Directive Number 1332.41 .....................ADD 35

Department of Defense Directive Number 5145.01 .....................ADD 39

TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES
PART I. THE AGENCIES GENERALLY
CHAPTER 7. JUDICIAL REVIEW

5 U.S.C. § 704

§ 704.  Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES
PART I. THE AGENCIES GENERALLY
CHAPTER 7. JUDICIAL REVIEW

5 U.S.C. § 706

§ 706.  Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

  (1) compel agency action unlawfully withheld or unreasonably delayed; and

  (2) hold unlawful and set aside agency action, findings, and conclusions found to be--

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

**ADD 2**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART I. ORGANIZATION AND GENERAL MILITARY POWERS
CHAPTER 4. OFFICE OF THE SECRETARY OF DEFENSE

10 U.S.C. § 140

§ 140.  General Counsel

(a) There is a General Counsel of the Department of Defense, appointed from civilian life by the President, by and with the advice and consent of the Senate.

(b) The General Counsel is the chief legal officer of the Department of Defense. He shall perform such functions as the Secretary of Defense may prescribe.

**ADD 3**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART II. PERSONNEL
CHAPTER 36. PROMOTION, SEPARATION, AND INVOLUNTARY RETIREMENT
OF OFFICERS ON THE ACTIVE-DUTY LIST
SUBCHAPTER I. SELECTION BOARDS

10 U.S.C. § 611

§ 611.  Convening of selection boards

(a) Whenever the needs of the service require, the Secretary of the military department concerned shall convene selection boards to recommend for promotion to the next higher permanent grade, under subchapter II of this chapter [10 USCS §§ 619 et seq.], officers on the active-duty list in each permanent grade from brigadier general in the Army, Air Force, or Marine Corps and from lieutenant (junior grade) through rear admiral (lower half) in the Navy. The preceding sentence does not require the convening of a selection board in the case of officers in the permanent grade of first lieutenant or, in the case of the Navy, lieutenant (junior grade) when the Secretary concerned recommends for promotion to the next higher grade under section 624(a)(3) of this title [10 USCS § 624(a)(3)] all such officers whom the Secretary finds to be fully qualified for promotion.

(b) Whenever the needs of the service require, the Secretary of the military department concerned may convene selection boards to recommend officers for continuation on active duty under section 637 of this title [10 USCS § 637] or for early retirement under section 638 of this title [10 USCS § 638].

(c) The convening of selection boards under subsections (a) and (b) shall be under regulations prescribed by the Secretary of Defense.

**ADD 4**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART II. PERSONNEL
CHAPTER 36. PROMOTION, SEPARATION, AND INVOLUNTARY RETIREMENT
OF OFFICERS ON THE ACTIVE-DUTY LIST
SUBCHAPTER II. PROMOTIONS

10 U.S.C. § 624

§ 624.  Promotions: how made

(a)

(1) When the report of a selection board convened under section 611(a) of this title [10 USCS § 611(a)] is approved by the President, the Secretary of the military department concerned shall place the names of all officers approved for promotion within a competitive category on a single list for that competitive category, to be known as a promotion list, in the order of the seniority of such officers on the active-duty list. A promotion list is considered to be established under this section as of the date of the approval of the report of the selection board under the preceding sentence.

(2) Except as provided in subsection (d), officers on a promotion list for a competitive category shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed. Promotions shall be made in the order in which the names of officers appear on the promotion list and after officers previously selected for promotion in that competitive category have been promoted. Officers to be promoted to the grade of first lieutenant or lieutenant (junior grade) shall be promoted in accordance with regulations prescribed by the Secretary concerned.

(3) (A) Except as provided in subsection (d), officers on the active-duty list in the grade of first lieutenant or, in the case of the Navy, lieutenant (junior grade) who are on an approved all-fully-qualified-officers list shall be promoted to the next higher grade in accordance with regulations prescribed by the Secretary concerned.

(B) An all-fully-qualified-officers list shall be considered to be approved for purposes of subparagraph (A) when the list is approved by the President. When so approved, such a list shall be treated in the same manner as a promotion list under this chapter.

(C) The Secretary of a military department may make a recommendation to the President for approval of an all-fully-qualified-officers list only when the Secretary determines that all officers on the list are needed in the next higher grade to accomplish mission objectives.

(D) For purposes of this paragraph, an all-fully-qualified-officers list is a list of all officers on the active-duty list in a grade who the Secretary of the military department concerned determines--

(i) are fully qualified for promotion to the next higher grade; and

(ii) would be eligible for consideration for promotion to the next higher grade by a selection board convened under section 611(a) of this title [10 USCS § 611(a)] upon the convening of such a board.

**ADD 5**

(b)

(1) A regular officer who is promoted under this section is appointed in the regular grade to which promoted and a reserve officer who is promoted under this section is appointed in the reserve grade to which promoted.

(2) The date of rank of an officer appointed to a higher grade under this section is determined under section 741(d) of this title [10 USCS § 741(d)].

(c) Appointments under this section shall be made by the President, by and with the advice and consent of the Senate, except that appointments under this section in the grade of first lieutenant or captain, in the case of officers of the Army, Air Force, or Marine Corps, or lieutenant (junior grade) or lieutenant, in the case of officers of the Navy, shall be made by the President alone.

(d) (1) Under regulations prescribed by the Secretary of Defense, the appointment of an officer under this section may be delayed if--

    (A) sworn charges against the officer have been received by an officer exercising general court-martial jurisdiction over the officer and such charges have not been disposed of;

    (B) an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer;

    (C) a board of officers has been convened under chapter 60 of this title [10 USCS §§ 1181 et seq.] to review the record of the officer;

    (D) a criminal proceeding in a Federal or State court is pending against the officer; or

    (E) substantiated adverse information about the officer that is material to the decision to appoint the officer is under review by the Secretary of Defense or the Secretary concerned.

    If no disciplinary action is taken against the officer, if the charges against the officer are withdrawn or dismissed, if the officer is not ordered removed from active duty by the Secretary concerned under chapter 60 of this title [10 USCS §§ 1181 et seq.], if the officer is acquitted of the charges brought against him, or if, after a review of substantiated adverse information about the officer regarding the requirement for exemplary conduct set forth in section 3583, 5947, or 8583 of this title [10 USCS § 3583, 5947, or 8583], as applicable, the officer is determined to be among the officers best qualified for promotion, as the case may be, then unless action to delay an appointment has also been taken under paragraph (2) the officer shall be retained on the promotion list (including an approved all-fully-qualified-officers list, if applicable) and shall, upon promotion to the next higher grade, have the same date of rank, the same effective date for the pay and allowances of the grade to which promoted, and the same position on the active-duty list as he would have had if no delay had intervened, unless the Secretary concerned determines that the officer was unqualified for promotion for any part of the delay. If the Secretary makes such a determination, the Secretary may adjust such date of rank, effective date of pay and allowances, and position on the active-duty list as the Secretary considers appropriate under the circumstances.

    (2) Under regulations prescribed by the Secretary of Defense, the appointment of an officer under this section may also be delayed in any case in which there is cause to

**ADD 6**

believe that the officer has not met the requirement for exemplary conduct set forth in section 3583, 5947, or 8583 of this title [10 USCS § 3583, 5947, or 8583], as applicable, or is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion. If it is later determined by a civilian official of the Department of Defense (not below the level of Secretary of a military department) that the officer is qualified for promotion to such grade and, after a review of adverse information regarding the requirement for exemplary conduct set forth in section 3583, 5947, or 8583 of this title [10 USCS § 3583, 5947, or 8583], as applicable, the officer is determined to be among the officers best qualified for promotion to such grade, the officer shall be retained on the promotion list (including an approved all-fully-qualified-officers list, if applicable) and shall, upon such promotion, have the same date of rank, the same effective date for pay and allowances in the higher grade to which appointed, and the same position on the active-duty list as he would have had if no delay had intervened, unless the Secretary concerned determines that the officer was unqualified for promotion for any part of the delay. If the Secretary makes such a determination, the Secretary may adjust such date of rank, effective date of pay and allowances, and position on the active-duty list as the Secretary considers appropriate under the circumstances.

  (3) The appointment of an officer may not be delayed under this subsection unless the officer has been given written notice of the grounds for the delay, unless it is impracticable to give such written notice before the effective date of the appointment, in which case such written notice shall be given as soon as practicable. An officer whose promotion has been delayed under this subsection shall be afforded an opportunity to make a written statement to the Secretary concerned in response to the action taken. Any such statement shall be given careful consideration by the Secretary.

  (4) An appointment of an officer may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay. An officer's appointment may not be delayed more than 90 days after final action has been taken in any criminal case against such officer in a Federal or State court, more than 90 days after final action has been taken in any court-martial case against such officer, or more than 18 months after the date on which such officer would otherwise have been appointed, whichever is later.

**ADD 7**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART II. PERSONNEL
CHAPTER 36. PROMOTION, SEPARATION, AND INVOLUNTARY RETIREMENT
OF OFFICERS ON THE ACTIVE-DUTY LIST
SUBCHAPTER II. PROMOTIONS

10 U.S.C. § 626

§ 626.  Acceptance of promotions; oath of office

(a) An officer who is appointed to a higher grade under section 624 of this title [10 USCS § 624] is considered to have accepted such appointment on the date on which the appointment is made unless he expressly declines the appointment.

(b) An officer who has served continuously since he subscribed to the oath of office prescribed in section 3331 of title 5 [5 USCS § 3331] is not required to take a new oath upon appointment to a higher grade under section 624 of this title [10 USCS § 624].

**ADD 8**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART II. PERSONNEL
CHAPTER 36. PROMOTION, SEPARATION, AND INVOLUNTARY RETIREMENT
OF OFFICERS ON THE ACTIVE-DUTY LIST
SUBCHAPTER III. FAILURE OF SELECTION FOR PROMOTION AND
RETIREMENT FOR YEARS OF SERVICE

10 U.S.C. § 629

§ 629.  Removal from a list of officers recommended for promotion

(a) Removal by President. The President may remove the name of any officer from a list of officers recommended for promotion by a selection board convened under this chapter [10 USCS §§ 611 et seq.].

(b) Removal due to Senate not giving advice and consent. If, after consideration of a list of officers approved for promotion by the President to a grade for which appointment is required by section 624(c) of this title [10 USCS § 624(c)] to be made by and with the advice and consent of the Senate, the Senate does not give its advice and consent to the appointment of an officer whose name is on the list, that officer's name shall be removed from the list.

(c) Removal after 18 months.
   (1) If an officer whose name is on a list of officers approved for promotion under section 624(a) of this title [10 USCS § 624(a)] to a grade for which appointment is required by section 624(c) of this title [10 USCS § 624(c)] to be made by and with the advice and consent of the Senate is not appointed to that grade under such section during the officer's promotion eligibility period, the officer's name shall be removed from the list unless as of the end of such period the Senate has given its advice and consent to the appointment.
   (2) Before the end of the promotion eligibility period with respect to an officer under paragraph (1), the President may extend that period for purposes of paragraph (1) by an additional 12 months.
   (3) In this subsection, the term "promotion eligibility period" means, with respect to an officer whose name is on a list of officers approved for promotion under section 624(a) of this title [10 USCS § 624(a)] to a grade for which appointment is required by section 624(c) of this title [10 USCS § 624(c)] to be made by and with the advice and consent of the Senate, the period beginning on the date on which the list is so approved and ending on the first day of the eighteenth month following the month during which the list is so approved.

(d) Administrative removal. Under regulations prescribed by the Secretary concerned, if an officer on the active-duty list is discharged or dropped from the rolls or transferred to a retired status after having been recommended for promotion to a higher grade under this

chapter, but before being promoted, the officer's name shall be administratively removed from the list of officers recommended for promotion by a selection board.

(e) Continued eligibility for promotion.

  (1) An officer whose name is removed from a list under subsection (a), (b), or (c) continues to be eligible for consideration for promotion. If he is recommended for promotion by the next selection board convened for his grade and competitive category and he is promoted, the Secretary of the military department concerned may, upon such promotion, grant him the same date of rank, the same effective date for the pay and allowances of the grade to which promoted, and the same position on the active-duty list as he would have had if his name had not been so removed.

  (2) If such an officer who is in a grade below the grade of colonel or, in the case of the Navy, captain is not recommended for promotion by the next selection board convened for his grade and competitive category, or if his name is again removed from the list of officers recommended for promotion, or if the Senate again does not give its advice and consent to his promotion, he shall be considered for all purposes to have twice failed of selection for promotion.

**ADD 10**

TITLE 10. ARMED FORCES
SUBTITLE A. GENERAL MILITARY LAW
PART II. PERSONNEL
CHAPTER 79. CORRECTION OF MILITARY RECORDS

10 U.S.C. § 1552

§ 1552.  Correction of military records: Claims incident thereto

(a) (1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Homeland Security may in the same manner correct any military record of the Coast Guard.

   (2) The Secretary concerned is not required to act through a board in the case of the correction of a military record announcing a decision that a person is not eligible to enlist (or reenlist) or is not accepted for enlistment (or reenlistment) or announcing the promotion and appointment of an enlisted member to an initial or higher grade or the decision not to promote an enlisted member to a higher grade. Such a correction may be made only if the correction is favorable to the person concerned.

   (3) Corrections under this section shall be made under procedures established by the Secretary concerned. In the case of the Secretary of a military department, those procedures must be approved by the Secretary of Defense.

   (4) Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a)(1) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a)(1) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

(c) (1) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, or on account of his or another's service as a civilian employee.

   (2) If the claimant is dead, the money shall be paid, upon demand, to his legal representative. However, if no demand for payment is made by a legal representative, the money shall be paid--

      (A) to the surviving spouse, heir, or beneficiaries, in the order prescribed by the law applicable to that kind of payment;

      (B) if there is no such law covering order of payment, in the order set forth in section 2771 of this title [10 USCS § 2771]; or

      (C) as otherwise prescribed by the law applicable to that kind of payment.

(3) A claimant's acceptance of a settlement under this section fully satisfies the claim concerned. This section does not authorize the payment of any claim compensated by private law before October 25, 1951.

(4) If the correction of military records under this section involves setting aside a conviction by court-martial, the payment of a claim under this subsection in connection with the correction of the records shall include interest at a rate to be determined by the Secretary concerned, unless the Secretary determines that the payment of interest is inappropriate under the circumstances. If the payment of the claim is to include interest, the interest shall be calculated on an annual basis, and compounded, using the amount of the lost pay, allowances, compensation, emoluments, or other pecuniary benefits involved, and the amount of any fine or forfeiture paid, beginning from the date of the conviction through the date on which the payment is made.

(d) Applicable current appropriations are available to continue the pay, allowances, compensation, emoluments, and other pecuniary benefits of any person who was paid under subsection (c), and who, because of the correction of his military record, is entitled to those benefits, but for not longer than one year after the date when his record is corrected under this section if he is not reenlisted in, or appointed or reappointed to, the grade to which those payments relate. Without regard to qualifications for reenlistment, or appointment or reappointment, the Secretary concerned may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate.

(e) No payment may be made under this section for a benefit to which the claimant might later become entitled under the laws and regulations administered by the Secretary of Veterans Affairs.

(f) With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title [10 USCS §§ 801 et seq.] (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to--
   (1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title [10 USCS §§ 801 et seq.] (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or
   (2) action on the sentence of a court-martial for purposes of clemency.

(g) In this section, the term "military record" means a document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the Secretary of the military department concerned, any other military matter affecting a member or former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person. Such term does not include records pertaining to civilian employment matters (such as matters covered by title 5 and chapters 81, 83, 87, 108, 373, 605, 607, 643, and 873 of this title [10 USCS §§ 1580 et seq.], 1601 et seq., 1701 et seq., 2161 et seq., 4021 et seq., 7041 et seq., 7081 et seq., 7471 et seq., 9021 et seq.]).

**ADD 12**

TITLE 10. ARMED FORCES
SUBTITLE D. AIR FORCE
PART I. ORGANIZATION
CHAPTER 803. DEPARTMENT OF THE AIR FORCE

10 U.S.C. § 8013

§ 8013.  Secretary of the Air Force

(a)

   (1) There is a Secretary of the Air Force, appointed from civilian life by the President, by and with the advice and consent of the Senate. The Secretary is the head of the Department of the Air Force.

   (2) A person may not be appointed as Secretary of the Air Force within five years after relief from active duty as a commissioned officer of a regular component of an armed force.

(b) Subject to the authority, direction, and control of the Secretary of Defense and subject to the provisions of chapter 6 of this title [10 USCS §§ 161 et seq.], the Secretary of the Air Force is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Air Force, including the following functions:

   (1) Recruiting.
   (2) Organizing.
   (3) Supplying.
   (4) Equipping (including research and development).
   (5) Training.
   (6) Servicing.
   (7) Mobilizing.
   (8) Demobilizing.
   (9) Administering (including the morale and welfare of personnel).
   (10) Maintaining.
   (11) The construction, outfitting, and repair of military equipment.
   (12) The construction, maintenance, and repair of buildings, structures, and utilities and the acquisition of real property and interests in real property necessary to carry out the responsibilities specified in this section.

(c) Subject to the authority, direction, and control of the Secretary of Defense, the Secretary of the Air Force is also responsible to the Secretary of Defense for--

   (1) the functioning and efficiency of the Department of the Air Force;

   (2) the formulation of policies and programs by the Department of the Air Force that are fully consistent with national security objectives and policies established by the President or the Secretary of Defense;

   (3) the effective and timely implementation of policy, program, and budget decisions and instructions of the President or the Secretary of Defense relating to the functions of the Department of the Air Force;

   (4) carrying out the functions of the Department of the Air Force so as to fulfill the

**ADD 13**

current and future operational requirements of the unified and specified combatant commands;

(5) effective cooperation and coordination between the Department of the Air Force and the other military departments and agencies of the Department of Defense to provide for more effective, efficient, and economical administration and to eliminate duplication;

(6) the presentation and justification of the positions of the Department of the Air Force on the plans, programs, and policies of the Department of Defense; and

(7) the effective supervision and control of the intelligence activities of the Department of the Air Force.

(d) The Secretary of the Air Force is also responsible for such other activities as may be prescribed by law or by the President or Secretary of Defense.

(e) After first informing the Secretary of Defense, the Secretary of the Air Force may make such recommendations to Congress relating to the Department of Defense as he considers appropriate.

(f) The Secretary of the Air Force may assign such of his functions, powers, and duties as he considers appropriate to the Under Secretary of the Air Force and to the Assistant Secretaries of the Air Force. Officers of the Air Force shall, as directed by the Secretary, report on any matter to the Secretary, the Under Secretary, or any Assistant Secretary.

(g) The Secretary of the Air Force may--

(1) assign, detail, and prescribe the duties of members of the Air Force and civilian personnel of the Department of the Air Force;

(2) change the title of any officer or activity of the Department of the Air Force not prescribed by law; and

(3) prescribe regulations to carry out his functions, powers, and duties under this title [10 USCS §§ 101 et seq.].

**ADD 14**

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 83. COURTS OF APPEALS

28 U.S.C. § 1295

§ 1295.  Jurisdiction of the United States Court of Appeals for the Federal Circuit

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--

   (1) of an appeal from a final decision of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court of the Northern Mariana Islands, in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents or plant variety protection;

   (2) of an appeal from a final decision of a district court of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title [28 USCS § 1346], except that jurisdiction of an appeal in a case brought in a district court under section 1346(a)(1), 1346(b), 1346(e), or 1346(f) of this title [28 USCS § 1346(a)(1), 1346(b), 1346(e), or 1346(f)] or under section 1346(a)(2) [28 USCS § 1346(a)(2)] when the claim is founded upon an Act of Congress or a regulation of an executive department providing for internal revenue shall be governed by sections 1291, 1292, and 1294 of this title [28 USCS §§ 1291, 1292, and 1294];

   (3) of an appeal from a final decision of the United States Claims Court [United States Court of Federal Claims];

   (4) of an appeal from a decision of--

      (A) the Patent Trial and Appeal Board of the United States Patent and Trademark Office with respect to a patent application, derivation proceeding, reexamination, post-grant review, or inter partes review under title 35, at the instance of a party who exercised that party's right to participate in the applicable proceeding before or appeal to the Board, except that an applicant or a party to a derivation proceeding may also have remedy by civil action pursuant to section 145 or 146 of title 35; an appeal under this subparagraph of a decision of the Board with respect to an application or derivation proceeding shall waive the right of such applicant or party to proceed under section 145 or 146 of title 35;

      (B) the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office or the Trademark Trial and Appeal Board with respect to applications for registration of marks and other proceedings as provided in section 21 of the Trademark Act of 1946 (15 U.S.C. 1071); or

      (C) a district court to which a case was directed pursuant to section 145, 146, or 154(b) of title 35;

   (5) of an appeal from a final decision of the United States Court of International Trade;

   (6) to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337);

**ADD 15**

(7) to review, by appeal on questions of law only, findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States (relating to importation of instruments or apparatus);

(8) of an appeal under section 71 of the Plant Variety Protection Act (7 U.S.C. 2461);

(9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5;

(10) of an appeal from a final decision of an agency board of contract appeals pursuant to section 7107(a)(1) of title 41;

(11) of an appeal under section 211 of the Economic Stabilization Act of 1970 [former 12 USCS § 1904 note];

(12) of an appeal under section 5 of the Emergency Petroleum Allocation Act of 1973;

(13) of an appeal under section 506(c) of the Natural Gas Policy Act of 1978 [15 USCS § 3416(c)]; and

(14) of an appeal under section 523 of the Energy Policy and Conservation Act [42 USCS § 6393].

(b) The head of any executive department or agency may, with the approval of the Attorney General, refer to the Court of Appeals for the Federal Circuit for judicial review any final decision rendered by a board of contract appeals pursuant to the terms of any contract with the United States awarded by that department or agency which the head of such department or agency has concluded is not entitled to finality pursuant to the review standards specified in section 7017(b) of title 41. The head of each executive department or agency shall make any referral under this section within one hundred and twenty days after the receipt of a copy of the final appeal decision.

(c) The Court of Appeals for the Federal Circuit shall review the matter referred in accordance with the standards specified in section 7107(b) of title 41. The court shall proceed with judicial review on the administrative record made before the board of contract appeals on matters so referred as in other cases pending in such court, shall determine the issue of finality of the appeal decision, and shall, if appropriate, render judgment thereon, or remand the matter to any administrative or executive body or official with such direction as it may deem proper and just.

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 85. DISTRICT COURTS; JURISDICTION

28 U.S.C. § 1346

§ 1346.  United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court [United States Court of Federal Claims], of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(b) (1) Subject to the provisions of chapter 171 of this title [28 USCS §§ 2671 et seq.], the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

(d) The district courts shall not have jurisdiction under this section of any civil action or

**ADD 17**

claim for a pension.

(e) The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 [28 USCS § 6226, 6228(a), 7426, or 7428] (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1954 [26 USCS §§ 6226, 6228(a), 7426, 7428, 7429].

(f) The district courts shall have exclusive original jurisdiction of civil actions under section 2409a [28 USCS § 2409a] to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

(g) Subject to the provisions of chapter 179 [28 USCS §§ 3901 et seq.], the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title [3 USCS §§ 401 et seq].

**ADD 18**

TITLE 32 -- NATIONAL DEFENSE
SUBTITLE A -- DEPARTMENT OF DEFENSE
CHAPTER VII -- DEPARTMENT OF THE AIR FORCE
SUBCHAPTER G -- ORGANIZATION AND MISSION -- GENERAL
PART 865 -- PERSONNEL REVIEW BOARDS
SUBPART A--AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

32 C.F.R. § 865.0 Purpose.

This subpart sets up procedures for correction of military records to remedy error or injustice. It tells how to apply for correction of military records and how the Air Force Board for Correction of Military Records (AFBCMR, or the Board) considers applications. It defines the Board's authority to act on applications. It directs collecting and maintaining information subject to the Privacy Act of 1974 authorized by 10 U.S.C. 1034 and 1552. System of Records notice F035 SAFCB A, Military Records Processed by the Air Force Correction Board, applies.

32 C.F.R. § 865.1 Setup of the Board.

The AFBCMR operates within the Office of the Secretary of the Air Force according to 10 U.S.C. 1552. The Board consists of civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force. Three members constitute a quorum of the Board.

32 C.F.R. § 865.2 Board responsibilities.

(a) Considering applications. The Board considers all individual applications properly brought before it. In appropriate cases, it directs correction of military records to remove an error or injustice, or recommends such correction.

(b) Recommending action. When an applicant alleges reprisal under the Military Whistleblowers Protection Act, 10 U.S.C. 1034, the Board may recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against those responsible for the reprisal.

(c) Deciding cases. The Board normally decides cases on the evidence of the record. It is not an investigative body. However, the Board may, in its discretion, hold a hearing or call for additional evidence or opinions in any case.

32 C.F.R. § 865.4 Board actions.

(a) Board information sources. The applicant has the burden of providing sufficient evidence of material error or injustice. However, the Board:

(1) May get additional information and advisory opinions on an application from any Air Force organization or official.

**ADD 19**

(2) May ask the applicant to furnish additional information regarding matters before the Board.

(b) Applicants will be given an opportunity to review and comment on advisory opinions and additional information obtained by the Board. They will also be provided with a copy of correspondence to or from the Air Force Review Boards Agency with an entity outside the Air Force Review Boards Agency in accordance with the provisions of 10 U.S.C. 1556.

(c) Consideration by the Board. A panel consisting of at least three board members considers each application. One panel member serves as its chair. The panel's actions and decisions constitute the actions and decisions of the Board.

(d) The panel may decide the case in executive session or authorize a hearing. When a hearing is authorized, the procedures in § 865.4(f), of this part, apply.

(e) Board deliberations. Normally only members of the Board and Board staff will be present during deliberations. The panel chair may permit observers for training purposes or otherwise in furtherance of the functions of the Board.

(f) Board hearings. The Board in its sole discretion determines whether to grant a hearing. Applicants do not have a right to a hearing before the Board.

(1) The Executive Director will notify the applicant or counsel, if any, of the time and place of the hearing. Written notice will be mailed 30 days in advance of the hearing unless the notice period is waived by the applicant. The applicant will respond not later than 15 days before the hearing date, accepting or declining the offer of a hearing and, if accepting, provide information pertaining to counsel and witnesses. The Board will decide the case in executive session if the applicant declines the hearing or fails to appear.

(2) When granted a hearing, the applicant may appear before the Board with or without counsel and may present witnesses. It is the applicant's responsibility to notify witnesses, arrange for their attendance at the hearing, and pay any associated costs.

(3) The panel chair conducts the hearing, maintains order, and ensures the applicant receives a full and fair opportunity to be heard. Formal rules of evidence do not apply, but the panel observes reasonable bounds of competency, relevancy, and materiality. Witnesses other than the applicant will not be present except when testifying. Witnesses will testify under oath or affirmation. A recorder will record the proceedings verbatim. The chair will normally limit hearings to 2 hours but may allow more time if necessary to ensure a full and fair hearing.

(4) Additional provisions apply to cases processed under 10 U.S.C. 1034. See DoDD 7050.06, Military Whistleblower Protection n2, and AFI 90-301, Inspector General Complaints Resolution.

**ADD 20**

n2 Copies may be obtained via the Internet at
http://www.dtic.mil/whs/directives/corres/pdf/705006p.pdf.

(g) The Board will not deny or recommend denial of an application on the sole ground that the issue already has been decided by the Secretary of the Air Force or the President of the United States in another proceeding.

(h) Board decisions. The panel's majority vote constitutes the action of the Board. The Board will make determinations on the following issues in writing:

(1) Whether the provisions of the Military Whistleblowers Protection Act apply to the application. This determination is needed only when the applicant invokes the protection of the Act, or when the question of its applicability is otherwise raised by the evidence.

(2) Whether the application was timely filed and, if not, whether the applicant has demonstrated that it would be in the interest of justice to excuse the untimely filing. When the Board determines that an application is not timely, and does not excuse its untimeliness, the application will be denied on that basis.

(3) Whether the applicant has exhausted all available and effective administrative remedies. If the applicant has not, the application will be denied on that basis.

(4) Whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief.

(5) In Military Whistleblowers Protection Act cases only, whether to recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against any Air Force official whom the Board finds to have committed an act of reprisal against the applicant. Any determination on this issue will not be made a part of the Board's record of proceedings and will not be given to the applicant, but will be provided directly to the Secretary of the Air Force under separate cover (Sec 865.2b, of this part).

(i) Record of proceedings. The Board staff will prepare a record of proceedings following deliberations which will include:

(1) The name and vote of each Board member.

(2) The application.

(3) Briefs and written arguments.

(4) Documentary evidence.

(5) A hearing transcript if a hearing was held.

**ADD 21**

(6) Advisory opinions and the applicant's related comments.

(7) The findings, conclusions, and recommendations of the Board.

(8) Minority reports, if any.

(9) Other information necessary to show a true and complete history of the proceedings.

(j) Minority reports. A dissenting panel member may prepare a minority report which may address any aspect of the case.

(k) Separate communications. The Board may send comments or recommendations to the Secretary of the Air Force as to administrative or disciplinary action against individuals found to have committed acts of reprisal prohibited by the Military Whistleblowers Protection Act and on other matters arising from an application not directly related to the requested correction of military records. Such comments and recommendations will be separately communicated and will not be included in the record of proceedings or given to the applicant or counsel.

(l) Final action by the Board. The Board acts for the Secretary of the Air Force and its decision is final when it:

(1) Denies any application (except under 10 U.S.C. 1034).

(2) Grants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not affect an appointment or promotion requiring confirmation by the Senate, and does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision.

(3) The Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision.

(m) The Board may identify DoD or Air Force policies, instructions, guidance or practices that are leading to, or likely to lead to unsound business decisions, unfair results, waste of government funds or public criticism. The Board will forward such observations directly to the appropriate offices of the Secretariat and/or Air Staff for review and evaluation. Such observations will not be included in the record of proceedings.

32 C.F.R. § 865.5 Decision of the Secretary of the Air Force.

(a) The Secretary may direct such action as he or she deems appropriate on each case, including returning the case to the Board for further consideration. Cases returned to the Board for further reconsideration will be accompanied by a brief statement of the reasons for such action. If the Secretary does not accept the Board's recommendation, the

**ADD 22**

Secretary's decision will be in writing and will include a brief statement of the grounds for his/her final decision.

(b) Decisions in cases under the Military Whistleblowers Protection Act. The Secretary will issue decisions on such cases within 180 days after receipt of the case and will, unless the full relief requested is granted, inform applicants of their right to request review of the decision by the Secretary of Defense (SecDef). Applicants will also be informed:

(1) Of the name and address of the official to whom the request for review must be submitted.

(2) That the request for review must be submitted within 90 days after receipt of the decision by the Secretary of the Air Force.

(3) That the request for review must be in writing and include the applicant's name, address, and telephone number; a copy of the application to the AFBCMR and the final decision of the Secretary of the Air Force; and a statement of the specific reasons the applicant is not satisfied with the decision of the Secretary of the Air Force.

(4) That the request must be based on the Board record; requests for review based on factual allegations or evidence not previously presented to the Board will not be considered under this paragraph but may be the basis for reconsideration by the Board under § 865.6.

(c) In cases under § 865.5(b) of this part which involve additional issues not cognizable under that paragraph, the additional issues may be considered separately by the Board under § 865.3 and § 865.4 of this part. The special time limit in § 865.5 (b) does not apply to the decision concerning these additional issues.

(d) Decisions in high profile or sensitive cases. Prior to taking final action on a BCMR application that has generated, or is likely to generate, significant public or Congressional interest, the Secretarial designee will provide the case record of proceedings through Secretarial channels to OSAF so that the Secretary can determine whether to decide the case personally or take other action the Secretary deems appropriate.

32 C.F.R. § 865.6 Reconsideration of applications.

(a) The Board may reconsider an application if the applicant submits newly discovered relevant evidence that was not reasonably available when the application was previously considered. The Executive Director or Team Chiefs will screen each request for reconsideration to determine whether it contains new evidence. New arguments about, or analysis of, evidence already considered, and additional statements which are cumulative to those already in the record of proceedings will not be considered new evidence.

**ADD 23**

(b) If the request contains new evidence, the Executive Director or his/her designee will refer it to a panel of the Board for a decision. The Board will decide the relevance and weight of any new evidence, whether it was reasonably available to the applicant when the application was previously considered, and whether it was submitted in a timely manner. The Board may deny reconsideration if the request does not meet the criteria for reconsideration. Otherwise the Board will reconsider the application and decide the case either on timeliness or merit as appropriate.

(c) If the request does not contain new evidence, the Executive Director or his/her designee will return it to the applicant without referral to the Board.

32 C.F.R. § 865.7 Action after final decision.

   (a) Action by the Executive Director. The Executive Director or his/her designee will inform the applicant or counsel, if any, of the final decision on the application. If any requested relief was denied, the Executive Director will advise the applicant of reconsideration procedures and, for cases processed under the Military Whistleblowers Protection Act, review by the SecDef. The Executive Director will send decisions requiring corrective action to the Chief of Staff, U.S. Air Force, for necessary action.

(b) Settlement of claims. The Air Force is authorized, under 10 U.S.C. 1552, to pay claims for amounts due to applicants as a result of correction of military records.

(1) The Executive Director will furnish the Defense Finance and Accounting Service (DFAS) with AFBCMR decisions potentially affecting monetary entitlement or benefits. DFAS will treat such decisions as claims for payment by or on behalf of the applicant.

(2) DFAS settles claims on the basis of the corrected military record. Computation of the amount due, if any, is a function of DFAS. Applicants may be required to furnish additional information to DFAS to establish their status as proper parties to the claim and to aid in deciding amounts due.

(3) Earnings received from civilian employment during any period for which active duty pay and allowances are payable will be deducted from the settlement. Amounts found due will be offset by the amount of any existing indebtedness to the government in compliance with the Debt Collection Act of 1982 or successor statutes.

(c) Public access to decisions. After deletion of personal information, AFBCMR decisions will be made available for review and copying at an electronic public reading room.

**ADD 24**

*EXTRACT*
*OF*

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

**AIR FORCE INSTRUCTION 36-2501**
**1 MARCH 1996**

*Personnel*

*OFFICER PROMOTIONS AND SELECTIVE*
*CONTINUATION*

**\*\*\***

**CHAPTER 12 PROMOTION PROPRIETY ACTIONS**
**\*\*\***

**12.1. General Information.** Commanders at all levels must ensure that only the best qualified officers are promoted to general officer. If a commander believes the preponderance of the evidence shows that an officer is not mentally, physically, morally or professionally qualified to perform the duties of the higher grade, it is in the best interests of the Air Force that immediate action be taken. All actions taken under this section, time permitting, should be coordinated with prior to initiation and in all cases should be processed through command channels to prior to action by the Secretary of the Air Force. AFI 36-2504, *Officer Promotions for the Reserve of the Air Force*, or NGR 1, *Federal Recognition of General Appointment and Promotion in the Air National Guard of the United States as a Reserve of the Air Force*, outline promotion propriety actions for Reserve of the Air Force general officers or colonels serving in general officer positions. Reserve component promotion propriety actions should be coordinated through AFDPG prior to staffing to SAF.

**\*\*\***

**12.3. Delaying Promotions.** In accordance with 10 U.S.C. 624, promotions can be delayed when the preponderance of the evidence shows that an officer is not mentally, physically, morally or professionally qualified to perform the duties of the higher grade.

12.3.1. An immediate or higher level commander may initiate recommendations for delay. The commander will notify the officer, in writing, of the reasons for the delay and will give the officer a reasonable amount of time to provide written comments. The notification should be given before the effective date of promotion. If the commander cannot give initial notice in writing, he or she may give it orally, but must follow by written notice as soon thereafter as practicable.

169

**ADD 25**

12.3.2. The SAF is the approval authority for initial delays up to 6 months. Requests for extensions in excess of 6 months must be processed to arrive in sufficient time for the Secretary to act on the extension before the expiration date of the existing delay. When the basis for a delay ceases to exist, prompt action should be initiated to terminate it. The SAF is the approval authority for termination of delays.

12.3.3. Where it is determined that the officer was not qualified for promotion for any part of the delay, the SAF may adjust the officer's date of rank, pay and allowances, and position on the Active Duty List.

**12.4. Removal From a Promotion List.** In accordance with 10 U.S.C. 629, officers are removed from a promotion list when the preponderance of the evidence shows that they are not mentally, physically, morally or professionally qualified to perform the duties of the higher grade.

12.4.1. An immediate or higher level commander may initiate a recommendation for removal. The commander will notify the officer, in writing, and give him or her an opportunity to review the evidence and to provide written comments. If the commander cannot give initial notice in writing, he or she may give it orally, but must follow by written notice as soon as practicable. The commander must notify the officer before the effective date of promotion, unless a delay is in effect--then the commander must notify the officer before the expiration of the delay.

12.4.2. Once a removal action is initiated, a promotion is effectively delayed until action is taken by the President or action is taken to terminate the removal. The SAF is the approval authority for termination of removal actions.

**\*\*\***

**12.6. Promotion Deviations From Sequence Number Order.** Officers on a promotion list may have their nominations and/or confirmations held up for many reasons. If a situation arises where an officers is not confirmed and promotions from the list begin, the Air Force may temporarily bypass the unconfirmed officers. Once confirmation occurs, this bypassed officer's promotion effective date will be established, for all purposes, to restore this officer to his or her original place on the promotion list.

**\*\*\***

170

**ADD 26**

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

**AIR FORCE INSTRUCTION 36-2603**

**1 MARCH 1996**

*Personnel*

**AIR FORCE BOARD FOR CORRECTION OF**
**MILITARY RECORDS**



**COMPLIANCE WITH THIS PUBLICATION IS MANDATORY**

**NOTICE:** This publication is available digitally on the SAF/AAD WWW site at: http://afpubs.hq.af.mil. If you lack access, contact your Publishing Distribution Office (PDO).

OPR:   AFBCMR  (Mr. John J. D'Orazio)             Certified by:  AFBCMR  (Mr. Mack M. Burton)
Supersedes  AFR 31-3, 10 August 1992                                                          Pages:  8
                                                                                        Distribution:  F

This instruction implements AFMD 42, 10 U.S.C. 1034 and 1552, Department of Defense Instruction (DoDI) 1336.6, Correction of Military Records, 28 December 1994, and Department of Defense Directive (DoDD) 7050.6, Military Whistleblower Protection Act, 3 September 1992.  It sets up procedures for correction of military records to remedy error or injustice.  It tells how to apply for correction of military records and how the Air Force Board for Correction of Military Records (AFBCMR, or the Board) considers applications.  It defines the Board's authority to act on applications.

This instruction directs collecting and maintaining information subject to the Privacy Act of 1974 authorized by 10 U.S.C. 1034 and 1552.  System of Records notice F035 SAFCB A, Military Records Processed by the Air Force Correction Board, applies.

*SUMMARY OF REVISIONS*

This publication revises AFR 31-3, 10 August 1992, to conform with the Chief of Staff policy to convert Air Force Regulations to Air Force Instructions.

**1.  Setup of the Board.**

  1.1.  The AFBCMR operates within the Office of the Secretary of the Air Force according to 10 U.S.C. 1552.  The Board consists of civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force.  Three members constitute a quorum of the Board.

**2.  Board Responsibilities.**

  2.1.  Considering Applications.  The Board considers all individual applications properly brought before it.  In appropriate cases, it directs correction of military records to remove an error or injustice, or recommends such correction.

2.2. Recommending Action. When an applicant alleges reprisal under the Military Whistleblowers Protection Act, 10 U.S.C. 1034, the Board may recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against those responsible for the reprisal.

2.3. Deciding Cases. The Board normally decides cases on the evidence of the record. It is not an investigative body. However, the Board may, in its discretion, hold a hearing or call for additional evidence or opinions in any case.

**3. Application Procedures.**

3.1. Who May Apply:

- In most cases, the applicant is a member or former member of the Air Force, since the request is personal to the applicant and relates to his or her military records.

- An applicant with a proper interest may request correction of another person's military records when that person is incapable of acting on his or her own behalf, is missing, or is deceased. Depending on the circumstances, a child, spouse, parent or other close relative, an heir, or a legal representative (such as a guardian or executor) of the member or former member may be able to show a proper interest. Applicants will send proof of proper interest with the application when requesting correction of another person's military records.

3.2. Getting Forms. Applicants may get a DD Form 149, "Application for Correction of Military Record Under the Provisions of Title 10, U.S.C., Section 1552," and Air Force Pamphlet 36-2607, "Applicants' Guide to the Air Force Board for Correction of Military Records (AFBCMR)," from:

- Any Air Force Military Personnel Flight (MPF) or publications distribution office.

- Most veterans' service organization.

- The Air Force Review Boards Office, SAF/MIBR, 550 C Street West, Suite 40, Randolph AFB TX 78150-4742.

- The AFBCMR, 1535 Command Drive, EE Wing 3rd Floor, Andrews AFB MD 20331-7002.

3.3. Preparation. Before applying, applicants should:

- Review Air Force Pamphlet 36-2607.

- Discuss their concerns with MPF, finance office, or other appropriate officials. Errors can often be corrected administratively without resort to the Board.

- Exhaust other available administrative remedies (otherwise the Board may return the request without considering it).

3.4. Submitting the Application. Applicants should complete all applicable sections of the DD Form 149, including at least:

- The name under which the member served.

- The member's social security number or Air Force service number.

- The applicant's current mailing address.

- The specific records correction being requested.

- Proof of proper interest if requesting correction of another person's records.

- The applicant's signature.

2

**ADD 28**

3.4.1.  Applicants should mail the original signed DD Form 149 and any supporting documents to the Air Force address on the back of the form.

3.5.  Meeting Time Limits.  Ordinarily, applicants must file an application within 3 years after the error or injustice was discovered, or, with due diligence, should have been discovered. An application filed later is untimely and may be denied by the Board on that basis.

3.5.1.  The Board may excuse untimely filing in the interest of justice.

3.5.2.  If the application is filed late, applicants should explain why it would be in the interest of justice for the Board to waive the time limits.

3.6.  Stay of Other Proceedings.  Applying to the AFBCMR does not stay other proceedings.

3.7.  Counsel Representation.  Applicants may be represented by counsel, at their own expense.

3.7.1.  The term "counsel" includes members in good standing of the bar of any state, accredited representatives of veterans' organizations recognized under 38 U.S.C. 3402, and other persons determined by the Executive Director of the Board to be competent to represent the interests of the applicant.

3.7.2.  See DoDD 7050.6 for special provisions for counsel in cases processed under 10 U.S.C. 1034.

3.8.  Page Limitations on Briefs.  Briefs in support of applications:

- May not exceed 25 double-spaced typewritten pages.
- Must be typed on one side of a page only with not more than 12 characters per inch.
- Must be assembled in a manner that permits easy reproduction.

3.8.1.  Responses to advisory opinions must not exceed 10 double-spaced typewritten pages and meet the other requirements for briefs.

3.8.2.  These limitations do not apply to supporting documentary evidence.

3.8.3.  In complex cases and upon request, the Executive Director of the Board may waive these limitations.

3.9.  Withdrawing Applications.  Applicants may withdraw an application at any time before the Board's decision.  Withdrawal does not stay the 3-year time limit.

## 4.  Board Actions.

4.1.  Board Information Sources.  The applicant has the burden of providing sufficient evidence of probable material error or injustice.  However, the Board:

- May get additional information and advisory opinions on an application from any Air Force organization or official.
- May require the applicant to furnish additional information necessary to decide the case.

4.1.1.  Applicants will normally be given an opportunity to review and comment on advisory opinions and additional information obtained by the Board.

**ADD 29**

4.2. Consideration by the Board. A panel consisting of at least three board members considers each application. One panel member serves as its chair. The panel's actions and decisions constitute the actions and decisions of the Board.

4.2.1. The panel may decide the case in executive session or authorize a hearing. When a hearing is authorized, the procedures in paragraph **4.4.** apply.

4.3. Board Deliberations. Normally only members of the Board and Board staff will be present during deliberations. The panel chair may permit observers for training purposes or otherwise in furtherance of the functions of the Board.

4.4. Board Hearings. The Board in its sole discretion determines whether to grant a hearing. Applicants do not have a right to a hearing before the Board.

4.4.1. The Executive Director will notify the applicant or counsel, if any, of the time and place of the hearing. Written notice will be mailed 30 days in advance of the hearing unless the notice period is waived by the applicant. The applicant will respond not later than 15 days before the hearing date, accepting or declining the offer of a hearing and, if accepting, provide information pertaining to counsel and witnesses. The Board will decide the case in executive session if the applicant declines the hearing or fails to appear.

4.4.2. When granted a hearing, the applicant may appear before the Board in person, represented by counsel, or in person with counsel and may present witnesses. It is the applicant's responsibility to notify witnesses, arrange for their attendance at the hearing, and pay any associated costs.

4.4.3. The panel chair conducts the hearing, maintains order, and ensures the applicant receives a full and fair opportunity to be heard. Formal rules of evidence do not apply, but the panel observes reasonable bounds of competency, relevancy, and materiality. Witnesses other than the applicant will not be present except when testifying. Witnesses will testify under oath or affirmation. A recorder will record the proceedings verbatim. The chair will normally limit hearings to 2 hours but may allow more time if necessary to ensure a full and fair hearing.

4.4.4. Additional provisions apply to cases processed under 10 U.S.C. 1034. See DoDD 7050.6.

4.5. The Board will not deny or recommend denial of an application on the sole ground that the issue already has been decided by the Secretary of the Air Force or the President of the United States in another proceeding.

4.6. Board Decisions. The panel's majority vote constitutes the action of the Board. The Board's decision will be in writing and will include determinations on the following issues:

- Whether the provisions of the Military Whistleblowers Protection Act apply to the application. This determination is needed only when the applicant invokes the protection of the Act, or when the question of its applicability is otherwise raised by the evidence.

- Whether the application was timely filed and, if not, whether the applicant has demonstrated that it would be in the interest of justice to excuse the untimely filing. When the Board determines that an application is not timely, and does not excuse its untimeliness, the application will be denied on that basis.

- Whether the applicant has exhausted all available and effective administrative remedies. If the applicant has not, the application will be denied on that basis.

**ADD 30**

- Whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief.

- In Military Whistleblowers Protection Act cases only, whether to recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against any Air Force official whom the Board finds to have committed an act of reprisal against the applicant. Any determination on this issue will not be made a part of the Board's record of proceedings and will not be given to the applicant, but will be provided directly to the Secretary of the Air Force under separate cover (paragraph **2.2.**).

4.7.  Record of Proceedings.  The Board staff will prepare a record of proceedings following deliberations which will include:

- The name and vote of each Board member.

- The application.

- Briefs and written arguments.

- Documentary evidence.

- A hearing transcript if a hearing was held.

- Advisory opinions and the applicant's related comments.

- The findings, conclusions, and recommendations of the Board.

- Minority reports, if any.

- Other information necessary to show a true and complete history of the proceedings.

4.8.  Minority Reports.  A dissenting panel member may prepare a minority report which may address any aspect of the case.

4.9.  Separate Communications.  The Board may send comments or recommendations to the Secretary of the Air Force as to administrative or disciplinary action against individuals found to have committed acts of reprisal prohibited by the Military Whistleblowers Protection Act and on other matters arising from an application not directly related to the requested correction of military records.  Such comments and recommendations will be separately communicated and will not be included in the record of proceedings or given to the applicant or counsel.

4.10.  Final Action by the Board.  The Board acts for the Secretary of the Air Force and its decision is final when it:

- Denies any application (except under 10 U.S.C. 1034)

- Grants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not involve an appointment or promotion requiring confirmation by the Senate.

4.10.1.  The Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision.

**5.  Decision of the Secretary of the Air Force.**  The Secretary may direct such action as he or she deems appropriate on each case, including returning the case to the Board for further consideration.  Cases returned to the Board for further reconsideration will be accompanied by a brief statement of the reasons

**ADD 31**

for such action. If the Secretary does not accept the Board's recommendation, the decision will be in writing and will include a brief statement of the grounds for denial.

5.1. Decisions in Cases Under the Military Whistleblowers Protection Act. The Secretary will issue decisions on such cases within 180 days after receipt of the case and will, unless the full relief requested is granted, inform applicants of their right to request review of the decision by the Secretary of Defense (SecDef). Applicants will also be informed:

- Of the name and address of the official to whom the request for review must be submitted.

- That the request for review must be submitted within 90 days after receipt of the decision by the Secretary of the Air Force.

- That the request for review must be in writing and include the applicant's name, address, and telephone number; a copy of the application to the AFBCMR and the final decision of the Secretary of the Air Force; and a statement of the specific reasons the applicant is not satisfied with the decision of the Secretary of the Air Force.

- That the request must be based on the Board record; requests for review based on factual allegations or evidence not previously presented to the Board will not be considered under this paragraph but may be the basis for reconsideration by the Board under paragraph **6.**

5.2. Decisions in cases filed under section 507, Public Law 103-160. The Secretary will issue a decision within 60 days of receipt of the case of an officer who:

- Was offered the opportunity to be discharged or separated from active duty under the Voluntary Separation Incentive (VSI) or Special Separation Benefit (SSB) programs,

- Elected not to accept such discharge or separation,

- Was thereafter discharged or separated from active duty, after September 30, 1990, as a result of selection by a board convened to select officers for early separation (a "RIF board"),

- Files an application with the Board within two years of the date of separation or discharge, or one year after the publication of this AFI, whichever is later, alleging that the officer was not effectively counselled, before electing not to accept discharge or separation under the VSI/SSB programs, concerning the officer's vulnerability to selection for involuntary discharge or separation ("RIF"), and

- Requests expedited consideration under this paragraph.

5.2.1. Upon finding of ineffective counseling, the Secretary will provide the officer with an opportunity to participate, at the officer's option, in the VSI or SSB programs or, if eligible, in an early retirement program.

5.3. In cases under paragraphs **5.1.** or **5.2.** which involve additional issues not cognizable under those paragraphs, the additional issues may be considered separately by the Board under paragraphs **3.** and **4.** The special time limits in paragraphs **5.1.** and **5.2.** do not apply to the decision concerning these additional issues.

**6. Reconsideration of Applications.** The Board may reconsider an application if the applicant submits newly discovered relevant evidence that was not available when the application was previously considered. The Executive Director will screen each request for reconsideration to determine whether it contains new evidence.

**ADD 32**

6.1.  If the request contains new evidence, the Executive Director will refer it to a panel of the Board for a decision.  The Board will decide the relevance and weight of any new evidence, whether it was reasonably available to the applicant when the application was previously considered, and whether it was submitted in a timely manner.  The Board may deny reconsideration if the request does not meet the criteria for reconsideration.  Otherwise the Board will reconsider the application and decide the case either on timeliness or merit as appropriate.

6.2.  If the request does not contain new evidence, the Executive Director will return it to the applicant without referral to the Board.

## 7. Action After Final Decision.

7.1.  Action by the Executive Director.  The Executive Director will inform the applicant or counsel, if any, of the final decision on the application.  If any requested relief was denied, the Executive Director will advise the applicant of reconsideration procedures and, for cases processed under the Military Whistleblowers Protection Act, review by the SecDef.  The Executive Director will send decisions requiring corrective action to the Chief of Staff, US Air Force, for necessary action.

7.2.  Settlement of Claims.  The Air Force is authorized, under 10 U.S.C. 1552, to pay claims for amounts due to applicants as a result of correction of military records.

7.2.1.  The Executive Director will furnish the Defense Finance and Accounting Service (DFAS) with AFBCMR decisions potentially affecting monetary entitlement or benefits. DFAS will treat such decisions as claims for payment by or on behalf of the applicant.

7.2.2.  DFAS settles claims on the basis of the corrected military record.  Computation of the amount due, if any, is a function of DFAS.  Applicants may be required to furnish additional information to DFAS to establish their status as proper parties to the claim and to aid in deciding amounts due.

7.3.  Public Access to Decisions.  After deletion of personal information, AFBCMR decisions will be made available for review and copying at a public reading room in the Washington DC metropolitan area.

## 8. Miscellaneous Provisions.

8.1.  At the request of the Board, all Air Force activities and officials will furnish the Board with:

- All available military records pertinent to an application.
- An advisory opinion concerning an application.  The advisory opinion will include an analysis of the facts of the case and of the applicant's contentions, a statement of whether or not the requested relief can be done administratively, and a recommendation on the timeliness and merit of the request. Regardless of the recommendation, the advisory opinion will include instructions on specific corrective action to be taken if the Board grants the application.

8.2.  Access to Records.  Applicants will have access to all records considered by the Board, except those classified or privileged.  To the extent practicable, applicants will be provided unclassified or nonprivileged summaries or extracts of such records considered by the Board.

8.3.  Payment of Expenses.  The Air Force has no authority to pay expenses of any kind incurred by or on behalf of an applicant in connection with a correction of military records under 10 U.S.C. 1034 or 1552.

7

**ADD 33**

8.4.  Form Prescribed.  DD Form 149.

RODNEY A. COLEMAN,
Assistant Secretary of the Air Force for Manpower, Reserve
Affairs, Installations and Environment

**ADD 34**



# Department of Defense
# **DIRECTIVE**

**NUMBER** 1332.41
March 8, 2004
<span style="color:red">Certified Current as of April 23, 2007</span>

USD(P&R)

SUBJECT:  Boards for Correction of Military Records (BCMRs) and Discharge Review Boards (DRBs)

References: (a)  DoD Directive 1332.28, "Discharge Review Board (DRB) Procedures and Standards," August 11, 1982 (hereby canceled)
      (b)  DoD Instruction 1336.6, "Correction of Military Records," December 28, 1994 (hereby canceled)
      (c)  Sections 1413(a), 1552, 1553, 1556, and 1557 of title 10, United States Code

## 1. PURPOSE

This Directive:

    1.1.  Cancels reference (a) and replaces reference (b).

    1.2.  Assigns responsibilities for administering discharge review boards (DRBs) and for correcting any military record of the Military Department when the Secretary concerned deems necessary in accordance with reference (c).

    1.3.  Establishes uniform policies for the review of discharges or dismissals under reference (c).

## 2. APPLICABILITY

The provisions of this Directive apply to the Office of the Secretary of Defense (OSD), the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to as "the DoD Components").  The term, "Military Services," as used herein, refers to the Army, the Navy, the Air Force and the Marine Corps.

**ADD 35**

*DoDD 1332.41, March 8, 2004*

3. <u>POLICY</u>

It is DoD policy that:

    3.1.  Procedures established by the Secretaries of the Military Departments for the correction of military records and for the review of discharges and dismissals must conform to the requirements of reference (c) and this Directive.

    3.2.  Military Department policy governing the operation and conduct of boards for the correction of military records and boards for review of discharges or dismissals shall state the scope of each board's authority and, at a minimum, require that:

        3.2.1.  The boards consider applications individually and fashion relief appropriate to the facts and circumstances of each case.

        3.2.2.  Applications be submitted by the individual seeking relief or by an appropriate representative as defined in reference (c), as applicable.

        3.2.3.  Before granting relief, sufficient evidence justifying the relief must be on the record or provided by the applicant.  Relief shall be denied if there is insufficient material evidence in the record or provided by the applicant to warrant relief.

    3.3.  Combat-Related Special Compensation.

        3.3.1.  In considering an application for combat-related special compensation under reference (c), the Boards for Correction of Military Records (BCMR) shall seek an advisory opinion from the Director of Compensation, Office of the Deputy Under Secretary of Defense (Military Personnel Policy) (ODUSD/MPP).

        3.3.2.  The BCMRs shall provide the ODUSD/MPP a copy of any final decision concerning an application for combat-related special compensation.

4. <u>RESPONSIBILITIES</u>

    4.1.  The <u>Under Secretary of Defense (Personnel and Readiness)</u> (USD(P&R)) shall:

        4.1.1.  Resolve all issues concerning DRBs that are not resolved by the Military Departments.

        4.1.2.  Ensure uniformity among the Military Departments in the rights afforded applicants in discharge reviews.

*DoDD 1332.41, March 8, 2004*

4.1.3.  Review and approve procedures prescribed by the Secretaries of the Military Departments for correction of military records under the authority of reference (c).

4.2.  The <u>Secretaries of the Military Departments</u> have the authority for final decision and the responsibility for the operation of their respective BCMRs and DRBs under reference (c).

4.2.1.  The Secretary concerned shall prescribe procedures for the correction of military records and obtain approval of such procedures in accordance with this Directive. Additionally, the Secretary concerned shall maintain a permanent record of each procedure approval.

4.2.2.  The Secretary of each Military Department shall ensure that an applicant seeking corrective action by the Department's BCMR or DRB is provided a copy of all correspondence to or from the agency or board with an entity or person outside the agency or board in accordance with reference (c).  Any administrative correspondence or military record that is or may be provided to the applicant by the Military Department or other source need not be provided to the applicant.

4.2.3.  The Secretary of each Military Department shall ensure that the time standards for disposition of applications before the BCMRs are met, in accordance with reference (c).

4.3.  The <u>Secretary of the Army</u> shall:

4.3.1.  Serve as the designated DoD Lead and DoD-wide focal point for administrative matters regarding DRBs.

4.3.2.  Review suggested modifications to this Directive, including implementing documents; monitor the implementing documents of the other Military Departments; resolve differences, when practicable; recommend specific changes; provide supporting rationale to the USD(P&R) for decision; and submit appropriate documentation through the USD(P&R) and the OSD Federal Register liaison officer to effect publication in the Federal Register.

4.3.3.  Maintain the DD Form 293, "Application for the Review of Discharge or Dismissal from the Armed Forces of the United States," and DD Form 149, "Application for Correction of Military Records Under the Provisions of Title 10, U.S. Code, Section 1552," and republish them as necessary after appropriate coordination with the other Military Departments, the USD(P&R), and the Office of Management and Budget.

4.3.4.  Respond to all inquiries from private individuals, organizations, or public officials with regard to DRB matters.  When a specific Military Service can be identified, refer such correspondence to the appropriate DRB for response or designate an appropriate activity to perform this task.

**ADD 37**

4.3.5.  Provide overall guidance and supervision to the DoD Boards' Electronic Reading Room and the Reading Room Library.  The DoD Electronic Reading Room's website is located at <http://boards.af.mil> and shall contain all the decisional documents since 1996 for each Department's boards and application forms for complainants to download electronically. The DoD Reading Room Library shall consist of microfiche records of the decisional documents for each Department's boards from 1976 through 1996 and be maintained by the Office of the Secretary of the Army.  Notice of the location, hours of operation, and similar types of information regarding the Reading Room Library shall be published in the <u>Federal Register</u>.

5.  <u>EFFECTIVE DATE</u>

This Directive is effective immediately.

Paul Wolfowitz
Deputy Secretary of Defense



# Department of Defense
# DIRECTIVE

NUMBER 5145.1

May 2, 2001

<span style="color:red">Certified Current as of November 21, 2003</span>

DA&M

SUBJECT:  General Counsel of the Department of Defense

References:  (a)  Title 10, United States Code
            (b)  DoD Directive 5145.1, subject as above, December 15, 1989 (hereby canceled)
            (c)  DoD 5500.7-R, "Joint Ethics Regulation," August 1993
            (d)  DoD Directive 5145.3, "Surveillance of the DoD Security Programs," October 19, 1962
            (e)  through (o), see enclosure 1

## 1. REISSUANCE AND PURPOSE

Pursuant to the authorities provided in reference (a), this Directive reissues reference (b) in order to update the responsibilities, functions, relationships, and authorities of the General Counsel of the Department of Defense (GC, DoD) and to incorporate appropriate Deputy Secretary of Defense delegations of decision authorities.

## 2. APPLICABILITY

This Directive applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the Department of Defense (hereafter referred to collectively as "the DoD Components").

**ADD 39**

*DODD 5145.1, May 2, 2001*

3. <u>RESPONSIBILITIES AND FUNCTIONS</u>

The <u>General Counsel, Department of Defense</u> (GC, DoD), is the chief legal officer of the Department of Defense and shall:

    3.1.  Provide advice to the Secretary and Deputy Secretary of Defense regarding all legal matters and services performed within, or involving, the Department of Defense.

    3.2.  Provide legal advice to Office of the Secretary of Defense (OSD) organizations and, as appropriate, other DoD Components.

    3.3.  Oversee, as appropriate, legal services performed within the Department of Defense, including determining the adherence by attorneys in the Department of Defense to appropriate professional responsibility standards.

    3.4.  Coordinate on appeals from denials of requests under the Freedom of Information Act, as appropriate.

    3.5.  Establish policy for and oversee the Standards of Conduct Program within the Department of Defense.

    3.6.  Serve as the Designated Agency Ethics Official (DAEO) for OSD and all DoD organizations that are not defined as separate Agencies in DoD 5500.7-R (reference (c)), and designate an alternate DAEO and Deputy DAEOs, as appropriate.

    3.7.  Provide advice on standards of conduct involving personnel of OSD and, as appropriate, other DoD Components.

    3.8.  Develop and manage the DoD Legislative Program and coordinate DoD positions on legislation and Executive orders.

    3.9.  Provide for the coordination of significant legal issues before the Department of Justice, including litigation involving the Department of Defense and other matters in which the Department of Defense has an interest.

    3.10.  Establish DoD policy on general legal issues, determine the DoD position on specific legal problems, and resolve disagreements within the Department of Defense on such matters.

**ADD 40**

3.11.  Perform such functions relating to the DoD security program (including surveillance over DoD personnel security programs in accordance with DoD Directive 5145.3 and DoD Directive O-5205.7 (references (d) and (e)) as the Secretary or Deputy Secretary of Defense may assign.

3.12.  Act as lead counsel for the Department in all international negotiations conducted by the OSD Components and coordinate on all proposed international agreements prior to their tender to prospective parties by the OSD Components, prior to the initiation of negotiations, and prior to final conclusion of proposed international agreements; oversee legal reviews performed by the DoD Components with respect to the negotiation and conclusion of international agreements in accordance with DoD Directive 5530.3 (reference (f)).

3.13.  Maintain the central repository for all international agreements coordinated, negotiated, or concluded by DoD personnel.

3.14.  Provide for guidance in, and coordination of, significant legal issues in international law, including those presented by military operations requiring the approval of the Secretary of Defense, the conduct of the DoD Law of War Program (reference (g)), and the review of the legality of weapons (reference (h)).

3.15.  Perform the legal analysis and coordination of the impact on the Department of Defense of mergers and acquisitions involving major defense suppliers, and coordinate contacts between DoD personnel and the Government Agency responsible for the antitrust aspects related to such mergers and acquisitions, in accordance with DoD Directive 5000.62, (reference (i)); and review other agreements between competitors or potential competitors involving major defense suppliers, that may have an adverse impact on competition, and coordinate contacts between DoD personnel and the Government Agency responsible for the antitrust aspects related to such arrangements and agreements, in accordance with (reference (i)).

3.16.  Determine whether legislation proposed by the Department of Defense or any DoD Component has federalism implications and/or imposes unfunded mandates.

3.17.  Advise the Secretary and, as appropriate, other senior Government officials, on all military justice matters requiring the attention of the Secretary of Defense and provide oversight of the annual review of the Manual for Courts-Martial by the Joint Service Committee on Military Justice in accordance with DoD Directive 5500.17 (reference (j)).

**ADD 41**

3.18.  Provide overall legal guidance on matters concerning the Office of Special Counsel in accordance with DoD Directive 5500.19 (reference (k)).

3.19.  Coordinate on deployment orders.

3.20.  Serve as the Director, Defense Legal Services Agency (DLSA).

3.21.  Perform such other duties as the Secretary or Deputy Secretary of Defense may prescribe.

## 4. RELATIONSHIPS

4.1.  In the performance of the above responsibilities and functions, the GC, DoD, shall:

4.1.1.  Exercise direction, authority, and control over the Office of the General Counsel, DoD, and the DLSA, consistent with DoD Directive 5145.4 (reference (l)), and over other such subordinate officials and organizations as may be assigned.

4.1.2.  Coordinate actions and exchange information with other OSD officials, the Heads of DoD Components, and other Federal officials having collateral or related functions.

4.1.3.  Serve as the representative of the Secretary of Defense to the Department of Justice on all appropriate matters.

4.1.4.  Use existing facilities and services of the Department of Defense, or other Federal Agencies, to avoid duplication and, whenever practicable, to achieve maximum efficiency and economy.

4.2.  Other OSD officials and the Heads of the DoD Components shall coordinate with the GC, DoD, on matters related to the responsibilities and functions in section 3., above.

## 5. AUTHORITIES

The GC, DoD, is delegated authority to:

5.1.  Issue DoD Instructions, DoD Publications, and one-time directive-type memoranda, consistent with DoD 5025.1-M (reference (m)), that implement policies

**ADD 42**

*DODD 5145.1, May 2, 2001*

approved by the Secretary of Defense in the functions assigned to the GC, DoD. Instructions to the Military Departments shall be issued through the Secretaries of those Departments.  Instructions to the Combatant Commands shall be issued through the Chairman of the Joint Chiefs of Staff.

5.2.  Obtain reports, information, advice, and assistance from other DoD Components, consistent with the policies and criteria of DoD Directive 8910.1 (reference (n)), as necessary.

5.3.  Communicate directly with the Heads of the DoD Components. Communications to the Commanders of the Combatant Commands shall be transmitted through the Chairman of the Joint Chiefs of Staff.

5.4.  Communicate with other Federal Departments and Agencies, representatives of the Legislative Branch, State and local government officials, and members of the public, as appropriate, in carrying out assigned functions.

5.5.  Exercise the specific delegations of authority in enclosure 2.


6.  <u>EFFECTIVE DATE</u>

This Directive is effective immediately.


Paul Wolfowitz
Deputy Secretary of Defense


Enclosures - 2
    E1.  References, continued
    E2.  Delegations of Authority

**ADD 43**

E1.  ENCLOSURE 1

REFERENCES, continued

(e)  DoD Directive O-5205.7, "Special Access Program (SAP) Policy," January 13, 1997

(f)  DoD Directive 5530.3, "International Agreements," June 11, 1987

(g)  DoD Directive 5100.77, "DoD Law of War Program," December 9, 1998

(h)  DoD Directive 5000.1, "The Defense Acquisition System," October 23, 2000

(i)  DoD Directive 5000.62, "Impact of Mergers or Acquisitions of Major DoD Suppliers on DoD Programs," October 21, 1996

(j)  DoD Directive 5500.17, "Role and Responsibilities of the Joint Service Committee on Military Justice," May 8, 1996

(k)  DoD Directive 5500.19, "Cooperation with the Office of Special counsel of the Merit Systems Protection Board," December 6, 1985

(l)  DoD Directive 5145.4, "Defense Legal Services Agency," December 15, 1989

(m)  DoD 5025.1-M, "DoD Directives System Procedures," August 1994

(n)  DoD Directive 8910.1, "Management and Control of Information Requirements," June 11, 1993

(o)  DoD Directive 5145.5, "Alternative Dispute Resolution (ADR)," April 22, 1996

**ADD 44**

*DODD 5145.1, May 2, 2001*

E2.  <u>ENCLOSURE 2</u>

<u>DELEGATIONS OF AUTHORITY</u>

E2.1.1.  Pursuant to the authority vested in the Secretary of Defense, and subject to the authority, direction, and control of the Secretary of Defense, the GC, DoD, is hereby delegated authority to:

E2.1.1.1.  Grant or deny applications for waiver of indebtedness arising from the erroneous payment of pay (including salary) and allowances (including travel and transportation allowances) pursuant to 10 U.S.C. 2774(a)(1), 5 U.S.C. 5584(a)(1), and 32 U.S.C. 716(a)(1).

E2.1.1.2.  Issue advance decisions pursuant to 31 U.S.C. 3529.

E2.1.1.3.  Settle claims pursuant to 10 U.S.C. 2575, 32 U.S.C. 3702(e), 37 U.S.C. 554(h), and 1520 of the Armed Forces Retirement Home Act of 1991, Pub. L. 101-510 (42 U.S.C. 420).

E2.1.1.4.  Serve as the DoD Dispute Resolution Specialist in accordance with the Administrative Dispute Resolution Act, Pub. L. 101-552 (5 U.S.C. 571 note), as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. 104-320.

E2.1.1.5.  Oversee and manage the DoD alternative dispute resolution program in accordance with the Administrative Dispute Resolution Act, as amended, and DoD Directive 5145.5 (reference (o)).

E2.1.1.6.  Exclude any DoD employee or group of DoD employees in OSD from any or all of the reporting requirements of the confidential financial disclosure reporting system pursuant to 5 CFR 2634.905.

E2.1.2.  The GC, DoD, may redelegate these authorities, as appropriate, and in writing, except as otherwise specifically indicated above, or as otherwise provided by law or regulation.

E2.1.3.  These delegations of authority are effective immediately.

**ADD 45**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 21, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Douglas K. Mickle
> DEPARTMENT OF JUSTICE
> COMMERCIAL LITIGATION BRANCH, CIVIL DIVISION
> P.O. Box 480
> Ben Franklin Station
> Room 4062
> Washington, DC  20044
> (202) 307-0383
>
> *Counsel for Appellee*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be timely filed in the United States Court of Appeals for the Federal Circuit.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly Gannon
Shelly Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

**CERTIFICATE OF COMPLIANCE**
**With Type-Volume Limitation, Typeface Requirements,**
**And Type Style Requirements**

1.　This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

　　this brief contains 13,357 words, excluding the parts of the brief
　　exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.　This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

　　this brief has been prepared in a proportionally spaced typeface using
　　Microsoft Word in 14 Times New Roman.

Dated: January 21, 2014　　　　　/s/ David P. Sheldon
　　　　　　　　　　　　　　　David P. Sheldon

　　　　　　　　　　　　　　　*Counsel for Appellant*